ROSSIEN *v.* BERRY.

1. AUTOMOBILES—NEGLIGENCE—EVIDENCE—SPEED—REAR-END COLLISION.

   In action for damages arising out of a rear-end collision of automobiles, defendant's testimony as to his speed and other matters at the trial and his admissions made to the sheriff and his deputy after the accident that he had misjudged his speed and distance until he got so close he could not stop and avoid the collision, his plea of guilty and payment of fine for failing to have his car under control were sufficient to take question of defendant's negligence to jury since it was his duty not to follow plaintiff's car more closely than was reasonable and prudent (1 Comp. Laws 1929, § 4709, as amended by Act No. 318, Pub. Acts 1939).

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—REAR-END COLLISION.

   Whether or not plaintiff motorists were guilty of contributory negligence was a question of fact properly submitted to jury where testimony was in dispute as to whether their car, the overtaken car in a rear-end collision on a trunk line highway, and which was suddenly stopped, was then on or off the pavement, there being no dispute that they knew of defendant's approach and gave him no signal of their intention to slow down or stop (1 Comp. Laws 1929, §§ 4711, 4718, as amended by Act No. 318, Pub. Acts 1939).

3. APPEAL AND ERROR—GREAT WEIGHT OF EVIDENCE—NUMBER OF WITNESSES—CREDIBILITY.

   On appeal from verdicts and judgments for defendant in actions arising out of a rear-end collision between automobiles, verdict is not found to have been contrary to the great weight of the evidence notwithstanding several witnesses testified for plaintiff and defendant was the only witness on his own behalf and the testimony as to how accident occurred was squarely in opposition, as the great weight does not depend on the number

---

Violation of statute as negligence, see 2 Restatement, Torts, § 286; effect of emergency on standard of care, see §§ 296, 470.

of witnesses for each party and credibility of witnesses is
for the jury.

4. Trial—Instructions—Evidence.
   Claim that court erred in giving instructions to jury respecting
   claims of respective parties in action arising from rear-end
   collision *held*, without justification in view of testimony.

5. Automobiles—Instructions—Request to Charge—Rear-End
   Collision—Assured Clear Distance Ahead.
   In action arising out of a rear-end collision between automobiles,
   trial court's refusal to give requested charge verbatim was
   not error where as requested the charge would have directed
   a finding that defendant was guilty of negligence as a matter
   of law by an improper application to the facts of the assured
   clear distance ahead rule by requiring him to avoid striking
   an object ahead and court properly instructed jury as to
   defendant's duty to have his car under proper control so as
   to stop in time when following another vehicle on the high-
   way (1 Comp. Laws 1929, § 4697, as amended by Act No. 318,
   Pub. Acts 1939).

6. Same—Sudden Emergency—Instruction—Rear-End Collision
   —Stopping—Signal.
   It was not error to instruct jury as to the law of negligence
   when a motorist is confronted with a sudden emergency in an
   action arising out of a rear-end collision on a trunk line high-
   way where defendant claimed and gave testimony tending to
   prove emergency was due to sudden stop by plaintiffs without
   signaling an intention to slow down or stop while knowing
   defendant was rapidly approaching from rear (1 Comp. Laws
   1929, § 4709, as amended by Act No. 318, Pub. Acts 1939).

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted April 14, 1943. (Docket No. 40, Cal-
endar No. 42,277.) Decided June 7, 1943. Rehear-
ing denied June 30, 1943.

Separate actions of case by Gerrit Rossien and
Coby Rossien against Paul Berry for damages sus-
tained in an automobile accident. Cases consoli-
dated. Verdicts and judgments for defendant.
Plaintiffs appeal. Affirmed.

*Charles E. Misner,* for plaintiffs.

*Alexander, McCaslin & Cholette,* for defendant.

BOYLES, C. J.   Plaintiffs Gerrit Rossien and his wife Coby were injured in an automobile accident at about 1:30 o'clock in the afternoon of June 28, 1941, on US-31, about four and one-half miles north of the city of Holland.   They commenced separate suits against defendant Paul Berry and the two cases were consolidated for jury trial.   The issues of fact as to defendant's negligence and plaintiffs' contributory negligence were submitted to the jury, resulting in a verdict of no cause for action.   Plaintiffs' motion for new trial on the grounds that the court erred in instructing the jury and that the verdict was against the great weight of the evidence was denied.   Judgment was entered on the verdict, and on appeal plaintiffs urge the same grounds for reversal.

Plaintiffs were traveling in a southerly direction on a two-lane, paved trunk line highway.   The road was straight, it was a clear day, the sun was shining.   The traveled portion of the highway was cement and about 18 feet wide, with a wide, hard shoulder.   The highway carried much traffic, and Mrs. Rossien, who was driving plaintiffs' car, was familiar with the conditions.   Plaintiffs were traveling at a rate of about 40 to 45 miles per hour when a Ford car ahead of them, operated by one Richard Groenewoud proceeding in the same direction, lost its left rear wheel and immediately ran off the pavement onto the right shoulder.   Plaintiffs, when this wheel came off, were about 150 feet behind this car.   Mrs. Rossien, the driver, slowed down until the Ford car got out of the way, then passed the Groenewoud car, and the accident occurred 100

to 130 feet farther down the pavement, when plaintiffs' car was struck from behind by defendant's car. There is a considerable variance in the testimony as to how the collision occurred. Mrs. Rossien testified:

"I was going south four and a half miles from Holland, and the Groenewoud car was ahead of mine and the left rear wheel ran off the Groenewoud car. I came in back of him and slowed down just a little bit back of the Groenewoud car until he got off the pavement. He pulled right off the pavement and as he got off the pavement, I kept going and increased my speed. I was going about 100 to 130 feet past the Groenewoud car when I heard the screech of brakes behind me and I looked up in the mirror and saw Berry's car bearing down on me. He was almost behind me and I tried to turn right off to the right. I got the front wheels off the road and he struck me."

On cross-examination, she testified:

"*Q.* Do you remember Mr. Rossien saying to you sometime before the collision with the Berry car, 'Keep going, keep moving'?
"*A.* He didn't say 'Keep going,' he says to me—
\* \* \*

"*Q.* He said, 'Don't stop'?
"*A.* 'Don't stop, keep going,' that is what he said just when Berry hit me. I says, 'Look back of us,' and he struck me.
\* \* \*

"*Q.* Weren't you stopping?
"*A.* No, sir. I was going 30 miles an hour and I heard the brakes and I tried to get off the highway, and he was coming so fast I could not."

Plaintiff Gerrit Rossien, who was riding in the front seat with Mrs. Rossien, testified:

"*Q.* When the wheel came off, or some time in there, you said something to Mrs. Rossien about keeping going?

"*A.* That was after we passed the car.

"*Q.* After you passed the car the wheel came off, you remember saying to Mrs. Rossien to keep going?

"*A.* Yes, sir.

"*Q.* And the reason you said that was because she was stopping.

"*A.* She slacked up and that was what made me say that. She pulled off the road and I thought she was going to stop, but she did not, and I had a wheel come off my car once and I didn't pay much attention to that, and I says, 'Keep on going,' just like that, to her, and she was going at that time.

"*Q.* In other words, there was something happened after you passed the car that caused you to say to the driver, 'Keep on going'?

"*A.* Yes, I did say that."

Richard Groenewoud testified:

"*A.* * * * We were going south on US-31 and the left rear wheel of my car came off. I pulled off to the side of the road and got out of my car and walked to the front of it to go across over to get the wheel. I had to wait for the Rossien car before I could go across to get the wheel. They went by me. Mrs. Rossien was driving about in the middle of the right-hand lane. I watched the car until it got past. After the Berry car got through I looked at both of them. I saw the collision. The collision occurred about 100 feet to the south of my car. I saw the Berry car when it was about even with me. He was driving a little over 60 miles per hour. After he had passed me he had the brakes on making a noise on the pavement. I saw practically all of his skid. I would guess he skidded around 60 feet.

"*Q.* Now, at the time the Berry car hit the Rossien car whether or not the Rossien car was standing still or moving?

"*A.* It is hard to tell. The way it looked to me it was still slacking up when they went past my car.

"*Q.* When it went past your car?

"*A.* Yes, sir.

"*Q.* Did you observe the cars at the time of the impact?

"*A.* Berry's car was in the way of my view, but at the rate they were slacking up they were still going when they hit.

 *       *       *

"*Q.* You didn't see the Rossien car pull off the pavement at any time before the impact?

"*A.* No, I did not."

The defendant, sworn in his own behalf, testified:

"*A.*       *       *       * As I approached the scene of the accident I would say my average speed was between 55 and 60 miles. I observed this car ahead of me some time before the collision. It was down on the highway. I imagine it was about three or four hundred feet down the road ahead of me. I didn't notice the other car which had the wheel off until it was sitting on the side of the road.

"*Q.* Now, where were you, Mr. Berry, when you first noticed anything unusual, if you did, where were you on the highway?

"*A.* Well, I was right even with this Groenewoud car, about the approximate location of the car on the highway.

"*Q.* Tell us in your own words what happened from the time you observed the Groenewoud car until the time of the collision, what you saw and observed and what happened?

"*A.* I suddenly realized that the other car ahead of me that had been going on down the highway in an ordinary traveling course and I was coming up

behind it, it had stopped and naturally I was in trouble. I slammed on my brakes.

"*Q.*  Tell the jury where it stopped.

"*A.*  It had stopped right on the highway. Going down the highway and just stopped right there on the concrete. I imagine its right rear wheel was about, I should say, two or three feet from the edge of the highway. It was stopped right in its tracks going down the pavement.

"*Q.*  Did you see any signal of any kind from the driver of that car that they were going to slow down or stop? Did you see any hand signal of any kind?

"*A.*  None whatever. It was just on the pavement there. At first I thought it was slowing down, but as I got closer to it I could see that it was stopped and then is when I tried to get out, get off the highway.

"*Q.*  Did you see any signal device on the back of the car, stoplight or anything that indicated the car was slowing up or stopping?

"*A.*  None whatever.

"*Q.*  Was there a signal light on the back of the car that indicated the application of brakes?

"*A.*  No.

"*Q.*  Any hand signal of any kind?

"*A.*  No, sir.

"*Q.*  When you realized that the car was stopping, tell the jury what you did?

"*A.*  The first reaction was to slam on the brakes when I saw it had stopped and I could not come to a stop in back of it I tried to swing off, get off the highway on the shoulder.

"*Q.*  Why didn't you turn to the left?

"*A.*  Well, just instinctively, it all happened quickly, it wasn't the place for me to go. In other words, I was in trouble and I wanted to get off the highway, and, if I went to the left, you know, the thing could be pretty bad, a head-on collision, or something.

\*   \*   \*

"*Q.* Was any part of the Ford car, the Rossien car, off the pavement on the shoulder at all when the accident occurred?

"*A.* Positively not. The marks on the highway showed that definitely, their tracks and my tracks and where they hit.

"*Q.* Was there a mark made by the wheels of their car at the point of impact?

"*A.* Yes, there was a mark, a skid mark made by their tire. It was about two feet long and it showed that it had skidded at the time of the collision."

This testimony, together with the admissions made by defendant Berry to the sheriff and his deputy after the accident, was sufficient to take to the jury the question of the defendant's negligence. He admitted to the officers he had misjudged his speed and distance until he got so close he could not stop and avoid the collision. He pleaded guilty and paid a fine for failing to have his car under control. It was the defendant's duty not to follow plaintiffs' car more closely than was reasonable and prudent. 1 Comp. Laws 1929, § 4709, as amended by Act No. 318, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4709, Stat. Ann. 1942 Cum. Supp. § 9.1577).

Was there testimony to take to the jury the question of plaintiffs' contributory negligence, as an issue of fact? The statute (1 Comp. Laws 1929, § 4718, as amended by Act No. 318, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 4718, Stat. Ann. 1942 Cum. Supp. § 9.1586]) in effect at the time this accident occurred provided:

"Outside of the limits of any city or village, it shall be unlawful to stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway

when it is practicable to stop, park or to leave such vehicle off such part of said highway.''

Plaintiffs do not claim that they gave any warning or signal of an intention to slow down or stop on the pavement. The testimony presented an issue of fact as to whether plaintiffs suddenly stopped their car on the paved portion of the highway. There is no question but that if plaintiffs did stop on the highway, as testified to by the defendant, they failed to signal such intention as required by 1 Comp. Laws 1929, § 4711 (Stat. Ann. § 9.1579). There also is no question but that plaintiffs knew of the approach of defendant's car from the rear. It was not error to submit to the jury the question of fact as to the contributory negligence of plaintiffs.

Was the verdict contrary to the great weight of the evidence? The testimony as to how the accident occurred was squarely in opposition. One viewpoint or the other must prevail. The mere fact that several witnesses testified for plaintiffs and that the defendant was the only witness in his own behalf would not justify our holding that the verdict for defendant was contrary to the great weight of the evidence. Great weight does not depend on the number of witnesses testifying for each party. Credibility of witnesses is for the jury. We do not find that the verdict was contrary to the great weight.

Appellants insist the court erred in instructing the jury as to the respective claims of the parties. We have examined the charge in the light of the testimony and find no justification for appellants' claim. It is to be expected that each party may feel that the trial court overemphasizes the claims of the opposite party. The respective claims of these parties were properly explained to the jury. We find no error in that respect.

Appellants further insist that the court erred in refusing to give the following instruction:

"You are instructed, that it is the duty of one operating an automobile, to operate it within the assured clear distance ahead at such a rate of speed that they can stop it within the assured clear distance ahead and so they may avoid striking objects upon the highway, and within the assured clear distance ahead must avoid striking either moving objects or stationary objects as well. If you find by a preponderance of the evidence that defendant did not observe this rule then he would be guilty of negligence."

The requested instruction as worded was not a proper statement of the law as applied to the case at bar. It purports to direct the jury to find the defendant guilty of negligence under the assured clear distance rule,* unless he avoided striking an object ahead. In effect, this would instruct the jury that the defendant was guilty of negligence as a matter of law, because it was not disputed that the defendant's automobile did strike that of the plaintiffs. The court properly instructed the jury as to defendant's duty to have his automobile under proper control so as to stop in time when following another vehicle on the highway. The requested instruction was covered in a proper manner in the court's charge to the jury. It was not error to refuse to give the requested charge verbatim.

In a charge marked for completeness and fairness, the court instructed the jury:

"I instruct you that where one is required to act suddenly in the face of imminent danger the law

---

* See 1 Comp. Laws 1929, § 4697, as amended by Act No. 318, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 4697, Stat. Ann. 1942 Cum. Supp. § 9.1565).—Reporter.

does not require him to exercise the same degree of care as if he had time for deliberation and the full exercise of judgment, and, under such circumstances, he is not required to exercise the care which, on careful consideration of the circumstances after the accident, it may appear he might have used in order to avoid injury. If a person, through no fault on his part, or negligence on his part, is suddenly placed in a position of peril, the law makes allowance for fright and lack of judgment and excitement, providing the person invoking that rule is not guilty of negligence in placing himself in such a position of peril.''

Appellants do not claim that the instruction as to the law of sudden emergency was wrong, but insist that it should not have been given at all. In this case, if the jury believed the defendant's testimony, plaintiffs stopped their automobile suddenly on the pavement without signaling an intention to slow down or stop, while knowing that defendant was rapidly approaching them from the rear. It cannot be said as a matter of law that this sudden emergency—if it did arise—was created by the defendant. If plaintiffs did stop suddenly on the pavement, the emergency was created by the sudden stop of plaintiffs' automobile, not by the manner in which defendant was approaching from the rear. In view of the defendant's testimony as to how the collision occurred, it was not error to charge the jury as to what constitutes negligence when the driver of an automobile is confronted with a sudden emergency.

In this case, no motion was made by either the plaintiffs or the defendant for a directed verdict on the ground that the other party was guilty of negligence as a matter of law. Under these circumstances, the court in a very exhaustive charge instructed the jury as to the law of negligence and

contributory negligence and charged the jury to find the fact as to whether the defendant was guilty of negligence or the plaintiffs free from contributory negligence. At the conclusion of the charge to the jury, counsel were asked by the court whether there was anything further and answered in the negative, except as to plaintiffs' one request to charge to which we have referred. The jury returned a general verdict of no cause for action. We find the charge as a whole was not erroneous on the grounds urged by appellants, and the verdict was not contrary to the great weight of the evidence.

Affirmed, with costs to appellee.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSH-NELL, and SHARPE, JJ., concurred.