651 N.W.2d 780 (2002)
252 Mich. App. 149
Deborah Ann EWING, and Krystal Thompson, a minor, by her next friend, Deborah Ann Ewing, Plaintiffs-Appellees,
v.
CITY OF DETROIT, a municipal corporation and Detroit Police Department, Defendants-Appellants. and
Jay Dean McGuigan, Third-Party Defendant.
Docket No. 225401.
Court of Appeals of Michigan.
Submitted May 15, 2002, at Detroit.
Decided July 9, 2002, at 9:00 a.m.
Released for Publication September 24, 2002.
*782 Barbara H. Goldman and Richard E. Shaw, Southfield, for the plaintiffs.
*783 Sullivan, Ward, Bone, Tyler & Asher, P.C. (by Ronald S. Lederman), Southfield, for the defendants.
Before: MURPHY, P.J., and JANSEN and MICHAEL J. KELLY, JJ.
*781 MURPHY, P.J.
In November 1990, Deborah Ewing and her four-year-old daughter, Krystal Thompson, sustained serious injuries when defendant Jay D. McGuigan struck Ewing's vehicle in his flight from the police. Ewing, for herself and as next friend of Thompson, brought suit against the City of Detroit and the Detroit Police Department (hereinafter defendants).[1] After several appeals, this case was finally tried before a jury. The jury found in plaintiffs' favor and subsequently judgment was entered awarding Ms. Ewing $1,404,786 in damages and $864,367 in damages for her daughter. Defendants filed a motion for judgment notwithstanding the verdict (JNOV), a new trial, or remittitur, which the trial court denied. Defendants then filed this appeal as of right. After the trial court's decision denying defendants' motion for postjudgment relief and before we had an opportunity to rule on appeal, our Supreme Court issued its decision in Robinson v. Detroit, 462 Mich. 439, 613 N.W.2d 307 (2000), which overruled case law upon which plaintiffs relied to state a claim against defendants in avoidance of governmental immunity. On appeal, defendants urge us to apply the rule enunciated in Robinson. We decline to do so, and we reject defendants' additional appellate arguments. The judgment is affirmed.

I. Basic Facts and Procedural History
This case has a lengthy factual and procedural history. To provide a proper context, we shall briefly recount the essential facts culminating in the lawsuit filed against defendants, followed by a procedural chronicle from the genesis of the lawsuit to the present.

A. Basic Facts
On November 29, 1990, Ms. Ewing was driving through her neighborhood in northwest Detroit at approximately twenty to twenty-five miles an hour with her then four-year-old daughter riding as a passenger. When plaintiffs' vehicle entered the intersection at Florence and Shaftsbury, an "open" residential intersection, a pickup truck driven by McGuigan broadsided her vehicle, rendering both vehicles undriveable. When McGuigan collided with plaintiffs at the intersection, he was fleeing from Detroit police officers.
Witnesses estimated that McGuigan was traveling through the residential area at speeds varying from sixty to seventy miles an hour and from seventy to ninety miles an hour. After the collision, McGuigan got out of the pickup truck and attempted to elude police officers who chased him, apprehended him, and arrested him. Ms. Ewing, on the other hand, remained unconscious in her vehicle. As a result of the collision, both plaintiffs suffered serious injuries.

B. Procedural History
On January 30, 1991, Ms. Ewing, in her individual capacity and as next friend of her minor daughter, filed suit against the individual police officers involved in the chase, the city of Detroit, the Detroit Police
*784 Department, and McGuigan, alleging gross negligence and the negligent operation of government vehicles.
On November 8, 1991, the trial court heard oral argument on defendants' motion for summary disposition. The trial court determined that plaintiffs failed to present evidence demonstrating negligence or gross negligence sufficient to overcome governmental immunity, and it granted summary disposition for all defendants except McGuigan.
Plaintiffs appealed the trial court's decision, and this Court affirmed summary disposition for the individual police officers but peremptorily reversed the trial court's decision granting summary disposition to defendants.[2] Defendants then filed an application for leave to appeal in the Michigan Supreme Court. On May 2, 1995, our Supreme Court entered an order vacating that portion of this Court's order reversing the trial court's order granting summary disposition to defendants. The case was remanded to this Court for plenary consideration of only that part of plaintiffs' appeal from the trial court's order granting summary disposition to defendants on plaintiffs' governmental immunity theory under M.C.L. § 691.1405. 448 Mich. 928, 534 N.W.2d 519 (1995).
On December 5, 1995, this Court issued its opinion in Ewing v. Detroit (On Remand), 214 Mich.App. 495, 543 N.W.2d 1 (1995), and affirmed its prior determination that the trial court erred in granting summary disposition to defendants on plaintiffs' claim for negligence pursuant to Fiser v. Ann Arbor, 417 Mich. 461, 339 N.W.2d 413 (1983).
In response to this Court's opinion in Ewing, defendants again appealed to our Supreme Court. The Supreme Court consolidated Ewing with Rogers v. Detroit and therein explicitly declined to overrule or otherwise modify its decision in Fiser and thus affirmed this Court's decision in Ewing. Rogers v. Detroit, 457 Mich. 125, 157, 579 N.W.2d 840 (1998).[3] On June 16, 1998, our Supreme Court denied rehearing, 457 Mich. 1207, and the case was returned to the trial court with a September 21, 1999, trial date.
On July 30, 1999, in an unrelated matter, our Supreme Court, sua sponte, entered an order announcing its intent to revisit, and potentially overrule, its prior decisions in Fiser and Rogers. Cooper v. Wade, 461 Mich. 1201, 597 N.W.2d 837 (1999). The order provided in relevant part:
On the Court's own motion, these appeals are to be resubmitted for oral argument and decision. The parties are instructed to provide additional briefing addressing the following issues: (1) Whether the Court should overrule Dedes v. Asch, 446 Mich. 99, 521 N.W.2d 488 (1994).(2) Whether the Court should overrule Fiser v. City of Ann Arbor, 417 Mich. 461, 339 N.W.2d 413 (1983), and Rogers v. Detroit, 457 Mich. 125, 579 N.W.2d 840 (1998). The parties should address whether the officers' decision to pursue, as opposed to the officers' physical handling of the vehicle during the pursuit of the fleeing vehicle, can be considered negligent use of a motor vehicle. (3) Whether the phrase "resulting from" in M.C.L. § 691.1405... should be construed as meaning a *785 direct or immediate connection between the negligent operation of the vehicle and the injury. [Cooper, supra at 1201, 597 N.W.2d 837.]
The order further mandated that all briefs were due by September 20, 1999, one day before the scheduled trial date in the present case. Id. On August 25, 1999, in light of our Supreme Court's order and the potential for it to overrule Fiser and Rogers, defendants filed a motion to adjourn the trial. The trial court denied defendants' motion on September 2, 1999.
On September 20, 1999, this Court denied defendants' interlocutory application for leave to appeal concerning the denial of the motion to adjourn the trial.[4] Defendants' subsequent application for leave to appeal this Court's decision to our Supreme Court was denied on September 22, 1999. 461 Mich. 868, 602 N.W.2d 577 (1999). Thus, defendants' efforts to prevent the trial from proceeding based on the law established in Fiser and reaffirmed in Rogers was denied by the trial court, the Court of Appeals, and the Supreme Court.
From September 23, 1999 to October 1, 1999, this matter was tried before a jury. The jury returned a verdict in plaintiffs' favor ascribing thirty-five percent of the fault for the accident to defendants and sixty-five percent of the fault to McGuigan. On October 8, 1999, the trial court entered judgment on the jury's verdict in plaintiffs' favor.
Defendants then filed a motion for JNOV, a new trial, or remittitur. Following a hearing on January 21, 2000, the trial court denied defendants' motion and entered an order consistent with its decision on February 7, 2000. Defendants filed a claim of appeal, the appeal before us now, on February 14, 2000.
However, after the trial court's order denying defendants' motion for JNOV, a new trial, or remittitur and before we had the opportunity to consider and rule on the issues presented in this appeal, on July 18, 2000, our Supreme Court rendered its decision in Robinson, supra. The Robinson Court, applying a vastly more restricted reading of M.C.L. § 691.1405 than did its predecessors, expressly overruled its prior decisions in Fiser and Rogers. Robinson, supra at 445, 613 N.W.2d 307. The Supreme Court in Robinson opined in pertinent part:
[T]he City of Detroit is entitled to judgment as a matter of law because one cannot reasonably conclude under a narrow reading of the motor vehicle exception to governmental immunity, M.C.L. § 691.1405 ... that plaintiffs' injuries resulted from the operation of the police vehicles. We agree with Fiser v. Ann Arbor, 417 Mich. 461, 339 N.W.2d 413 (1983), that an officer's physical handling of a motor vehicle during a police chase, can constitute "negligent operation... of a motor vehicle" within the motor vehicle exception. However, plaintiffs' injuries did not, as a matter of law, result from the operation of the police cars where the police cars did not hit the fleeing car or physically cause another vehicle or object to hit the vehicle that was being chased or physically force the vehicle off the road or into another vehicle or object. Thus, we overrule Fiser and Rogers v. Detroit, 457 Mich. 125, 579 N.W.2d 840 (1998). Contrary to Rogers, we also hold that an officer's decision to pursue does not constitute the negligent operation of a motor vehicle. [Robinson, supra at 445, 613 N.W.2d 307 (emphasis added).]
*786 This case is now before us for a fourth time. Defendants argue that as a matter of law, plaintiffs cannot plead facts to circumvent application of governmental immunity because the injuries did not "result from the negligent operation" of a police car, for purposes of M.C.L. § 691.1405. Defendants maintain that at trial, plaintiffs did not present a shred of evidence demonstrating that a police car actually struck the fleeing car or physically caused another automobile or object to hit the fleeing car or otherwise physically forced the fleeing car off the road or into another automobile or object as required by Robinson. Robinson, supra at 445, 613 N.W.2d 307. Accordingly, defendants argue that the trial court's decision denying defendants' motion for JNOV should be reversed, or alternatively, defendants should be granted a new trial.

II. Standard of Review
This Court reviews a trial court's decision with regard to a motion for JNOV de novo. Morinelli v. Provident Life & Accident Ins. Co., 242 Mich.App. 255, 260, 617 N.W.2d 777 (2000). A motion for JNOV should be granted only when, viewing the evidence and all legitimate inferences in a light most favorable to the nonmoving party, there remain no issues of material fact upon which reasonable minds could differ. Cipri v. Bellingham Frozen Foods, Inc., 235 Mich.App. 1, 14, 596 N.W.2d 620 (1999). As this Court stated in Morinelli, "[i]f reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." Morinelli, supra at 260-261, 617 N.W.2d 777.

III. The Motor Vehicle Exception to Governmental Immunity as Applied in Fiser and Rogers
Governmental immunity limits a governmental agency's liability in tort. Nawrocki v. Macomb Co. Rd. Comm., 463 Mich. 143, 155-156, 615 N.W.2d 702 (2000). Indeed, governmental immunity, where applicable, "extends immunity to all governmental agencies for all tort liability whenever they are engaged in the exercise or discharge of a governmental function." Id. at 156, 615 N.W.2d 702 (emphasis in original). Respecting its expansive application, the five statutory exceptions to governmental immunity are narrowly construed. Id. at 156-158, 615 N.W.2d 702.
To avoid governmental immunity, plaintiffs in the case at bar relied on the motor vehicle exception codified at M.C.L. § 691.1405, which provides in relevant part that: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer ... of the governmental agency, of a motor vehicle of which the governmental agency is owner...."
In Fiser, supra, our Supreme Court considered the motor vehicle exception to governmental immunity within the context of a high-speed police chase. Focusing primarily on the causation element, the Court determined that the fleeing defendant's "excessive speed" through a residential neighborhood could be said to have "resulted from" the police officers' pursuit, where the plaintiff argued that the police pursuit caused the defendant to travel at a high rate of speed, lose control of the vehicle, and ultimately caused the collision in which the plaintiff sustained personal injury. Fiser, supra at 475, 339 N.W.2d 413. Reversing the trial court's decision granting summary disposition to the city and the individual police officers involved in the chase, the Court stated that "reasonable men might conclude that the pursuit by defendants ... was not too remote a cause of plaintiff's injuries and that the negligent conduct of [the fleeing defendant] *787 did not sever that causal connection." Id.
Fifteen years later, our Supreme Court once again revisited the motor vehicle exception to governmental immunity in Rogers, supra. The Rogers Court not only affirmed its previous decision in Fiser, but also expanded upon the motor vehicle exception by extending its application to a police officer's mere decision to pursue a fleeing suspect. Rogers, supra at 145-146, 579 N.W.2d 840. Addressing this Court's criticism of Fiser's causation analysis in Ewing, the Rogers Court emphatically rejected the conclusion that, as a matter of law, the felon's flight as opposed to the officers' pursuit was the proximate cause of the plaintiffs' injuries. Id. at 142, 579 N.W.2d 840.
As previously indicated, after the trial court in the instant case rejected defendants' motion for JNOV, a new trial, or remittitur, and while the appeal was pending in this Court, our Supreme Court overruled both Fiser and Rogers and therein constricted the application of the motor vehicle exception. Robinson, supra at 445, 613 N.W.2d 307. The Robinson Court reasoned that absent some physical contact with either the plaintiff's vehicle or the fleeing suspect's vehicle in some manner, the plaintiff's injuries did not "result from" the operation of the police vehicles for purposes of the exception. Id. On appeal, defendants urge this Court to apply the law set forth in Robinson and reverse the trial court's decision denying defendants' motion for JNOV or a new trial.

IV. Law of the Case Doctrine
As an initial matter, we note that both parties appear to agree that application of the Robinson decision to the case at bar would preclude recovery because the police officers involved in the chase did not hit either plaintiffs' or McGuigan's car nor did any of the police officers physically force McGuigan's car into plaintiffs' car. Consequently, this Court must determine whether our Supreme Court's decision in Robinson bars plaintiffs' recovery given that both Fiser and Rogers were the controlling law when the jury rendered its verdict and when the trial court denied defendants' motion for JNOV, a new trial, or remittitur.
Plaintiffs argue that the law of the case doctrine applies and precludes application of Robinson in this case. We agree. Stated generally, the law of the case doctrine provides that if an appellate court decides a legal question and remands the case for further proceedings, not only is the lower tribunal bound by the appellate court's decision, but the appellate court is similarly bound in that the legal issue previously determined will not be resolved differently upon subsequent appeal in the same case where the facts remain materially the same. South Macomb Disposal Authority v. American Ins. Co., 243 Mich.App. 647, 654, 625 N.W.2d 40 (2000). The doctrine primarily seeks to maintain consistency and to preserve finality of judgments by avoiding reconsideration of issues once decided during the course of a single, continuous lawsuit. See id. at 654-655, 625 N.W.2d 40; Ashker v. Ford Motor Co., 245 Mich.App. 9, 13, 627 N.W.2d 1 (2001). The law of the case doctrine, however, will not apply where there has been an intervening change in the applicable law. Sumner v. General Motors Corp. (On Remand), 245 Mich.App. 653, 662, 633 N.W.2d 1 (2001). We hold that the law of the case doctrine is applicable to the instant case and that Robinson does not apply, even though it reflects an intervening change of law, because of the unusual procedural circumstances of this case, because the intervening-law exception is not *788 absolute, and because the administration of justice dictates that Robinson not be applied retroactively to this case.
We are presented with a somewhat unique situation in which the case before us was specifically overruled in Robinson, yet the case was still active at the time Robinson was decided. We believe it to be axiomatic that as a general proposition, a case overruled by our Supreme Court does not have a direct effect on the case overruled, i.e., verdicts and judgments in those cases are not modified or reversed because the law of the case was subsequently overruled. In Sumner, supra at 665, 633 N.W.2d 1, this Court, noting that a decision overruling a prior appellate decision does not and cannot have the effect of reversing the judgment rendered in the prior appellate decision, stated:
"[O]verrule" is a term that "denotes what a superior court does to a precedent that it expressly decides should no longer be controlling law," whereas "reverse" is a narrower term that "describes an appellate court's change to the opposite result from that by the lower court in a given case." A Dictionary of Modern Legal Usage (2d ed.), p. 632. Thus, to reverse is to change the result in the case at bar, to overrule is to declare that a rule of law no longer has precedential value. [Emphasis added.]
Therefore, the decision or judgment by our Supreme Court in Rogers remanding this case for trial could not be and was not reversed in Robinson, although its seminal holding could be and was overruled. In Sumner, supra at 668, 633 N.W.2d 1, this Court remanded for a new trial on the basis of a previous appellate judgment directing that a new trial take place even though the prior judgment had subsequently been overruled. However, the law to be applied in the new trial was the intervening change of law issued in the case overruling the initial appellate judgment. Id. Here, Rogers directed that a trial take place, and the trial occurred before Robinson changed the law regarding the statutory interpretation of M.C.L. § 691.1405. If Robinson had been decided before the trial, the trial court would have been in the unenviable position of deciding between enforcing the Rogers decision dictating that a trial occur and applying the legal principles of Robinson, which, if applied, would entitle defendants to a dismissal as a matter of law without trial. We are placed in that quandary in deciding this appeal because if we apply Robinson in favor of defendants, the effect would be to nullify the trial and retroactively take the matter out of the hands of the jury as envisioned and directed by Rogers, which decision is not subject to reversal.
Early Michigan Supreme Court precedent provided that an overruled decision remained the law of the case with respect to the particular case in which it was rendered. Metzen v. Dep't of Revenue, 310 Mich. 622, 629, 17 N.W.2d 860 (1945); Donohue v. Russell, 264 Mich. 217, 219, 249 N.W. 830 (1933). We believe that those precedents solve our quandary by allowing the application of not only the judgment in Rogers directing that a trial take place but also the legal principles set forth in Rogers. Therefore, although Robinson reflects an intervening change of law, under the circumstances of this particular case, the legal principles enunciated in Rogers are appropriately applied to the present case.
Additionally, an intervening change of law does not require, without exception, that the law of the case doctrine be rejected. In Bauer v. Garden City, 163 Mich.App. 562, 572, 414 N.W.2d 891 (1987), this Court addressed the following situation:
*789 Finally, we should consider whether the fact that Ross [v. Consumers Power Co. (On Rehearing), 420 Mich. 567, 363 N.W.2d 641 (1984) ], which contradicts this Court's earlier holding in this case, was decided in between the earlier holding and this one should make any difference to the application of the law of the case doctrine.
The Bauer panel held that the intervening decision in Ross did not preclude application of the law of the case doctrine. Bauer, supra at 573, 414 N.W.2d 891. This Court noted that "[t]o allow relitigation at the appellate level of every one of these cases which happened to remain at the trial level when Ross was decided would be imprudent indeed." Id. Here, it would be similarly imprudent not to apply the law of the case doctrine, considering the extensive history of this case. Moreover, we note that to the extent that the interpretation in Rogers constituted an incorrect interpretation of M.C.L. § 691.1405, this Court has held that the law of the case doctrine applies without regard to the correctness of the prior determination. Muilenberg v. Upjohn Co., 169 Mich.App. 636, 641, 426 N.W.2d 767 (1988).[5]
We do not rest our opinion solely on the analysis above. In further support, we also hold that although Robinson constituted an intervening change of law, the new statutory interpretation should not be applied retroactively under the factual circumstances of this case. Therefore, the exception to the law of the case doctrine is not applicable here, leaving the doctrine intact and applicable.
Generally, judicial decisions have full retroactive effect. Pohutski v. Allen Park, 465 Mich. 675, 696, 641 N.W.2d 219 (2002). However, retroactive application becomes problematic "[i]f a judicial decision is `unexpected' and `indefensible' in light of the law existing at the time of the underlying facts[.]" Lincoln v. General Motors Corp., 231 Mich.App. 262, 311, 586 N.W.2d 241 (1998), aff'd 461 Mich. 483, 607 N.W.2d 73 (2000) (Whitbeck, J., concurring, citing People v. Doyle, 451 Mich. 93, 104, 545 N.W.2d 627 [1996]).
In Pohutski, supra at 696, 641 N.W.2d 219, our Supreme Court, overruling prior case law interpreting M.C.L. § 691.1407 and applying its decision prospectively only, stated:
This Court adopted from Linkletter v. Walker, 381 U.S. 618; 85 S.Ct. 1731[;] 14 L.Ed.2d 601 (1965), three factors to be *790 weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. People v. Hampton, 384 Mich. 669, 674, 187 N.W.2d 404 (1971). In the civil context, a plurality of this Court noted that Chevron Oil v. Huson, 404 U.S. 97, 106-107, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. Riley v. Northland Geriatric Center (After Remand), 431 Mich. 632, 645-646, 433 N.W.2d 787 (1988) (Griffin, J.).
With respect to the third factor, the United States Supreme Court has stated that where a decision could produce substantial inequitable results if applied retroactively, there is ample case law in support of avoiding the injustice or hardship by a holding of nonretroactivity. Chevron Oil Co., supra at 107, 92 S.Ct. 349. The overriding goal in determining whether to apply a new rule of law retroactively is to effectuate fairness and public policy. Sellers v. Hauch, 183 Mich.App. 1, 11-12, 454 N.W.2d 150 (1990).
Here, we find it unnecessary to rule that Robinson applies either retroactively or prospectively outside the context of this case, and we only rule that it does not apply retroactively in the case at bar.[6] Initially, we find that Robinson established a new rule of law, which now requires a plaintiff who is proceeding pursuant to M.C.L. § 691.1405 to show that the police car hit the fleeing car or caused another vehicle or object to hit the vehicle that was being chased or physically forced the vehicle off the road or into another vehicle or object. Robinson, supra at 445, 613 N.W.2d 307. Before Robinson, there was no such requirement under M.C.L. § 691.1405.
Next, we find that the purpose of the new rule was to correct an error in the interpretation of M.C.L. § 691.1405 and prospective application would further that purpose and failing to apply the new rule retroactively to our specific case would not thwart the purpose. Pohutski, supra at 697, 641 N.W.2d 219.[7] Further, we find that the parties and the trial court clearly relied on the old rule in the trial proceedings below, and that plaintiffs relied on the old rule throughout the ten plus years this case has been in litigation. In fact, the parties and the trial court were required to *791 apply and rely on the old rule at trial as directed by Rogers. Finally, and most importantly, the administration of justice and fairness dictates that Robinson not apply to the present case, where the matter has been in litigation for ten plus years, and where a trial and all the costs, time, resources, and energy required in conducting a trial were expended in reliance on Rogers and before Robinson was decided. Also of great significance is the fact that this Court and our Supreme Court allowed the trial to take place by rejecting applications for leave to appeal seeking to stay the proceedings in light of the possibility that Fiser and Rogers were going to be overruled. Therefore, the Robinson decision does not form the basis to vacate the jury's verdict and the judgment rendered thereon, and it does not form the basis to enter a JNOV in defendants' favor.

V. Defendants' Motion for a New Trial
Defendants argue that the trial court erred in refusing to grant defendants' motion for a new trial on the ground that the verdict was contrary to law because plaintiffs presented no evidence that the police struck either plaintiffs' or McGuigan's vehicle, and Robinson precludes a finding of causation so as to support the jury's verdict. We have rejected application of Robinson; therefore, defendants' argument lacks merit. Additionally, defendants are not entitled to a new trial on the basis that the verdict was contrary to law under pre-Robinson case law.
This Court reviews the trial court's grant or denial of a motion for a new trial for an abuse of discretion. Morinelli, supra at 261, 617 N.W.2d 777. An abuse of discretion occurs when the decision was so violative of fact and logic that it evidenced a perversity of will, a defiance of judgment, or an exercise of passion or bias. Bean v. Directions Unlimited, Inc., 462 Mich. 24, 34-35, 609 N.W.2d 567 (2000).
Defendants have abandoned the issue whether the trial court erred in failing to grant a new trial on the basis that the verdict was contrary to law pursuant to MCR 2.611(A)(1)(e).
MCR 2.611 provides, in pertinent part:
(A) Grounds.
(1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:

* * *
(e) A verdict or decision against the great weight of the evidence or contrary to law.
In reviewing this issue, defendants discuss whether the verdict was contrary to law only under the state of the law as set forth in Robinson. Under the previous rule of law set forth in Rogers, i.e., that issues of negligence and proximate causation may properly be questions for the jury notwithstanding the absence of any physical participation in the crash by police vehicles, Rogers, supra at 143-145, 579 N.W.2d 840, we find that defendants have failed to properly present their issue for appeal and, therefore, have abandoned it because of their complete lack of a discussion of the evidence presented at trial in relation to the state of the law under Rogers. "It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court." Prince v. MacDonald, 237 Mich.App. 186, 197, 602 N.W.2d 834 (1999). This is also the case where a party fails to cite any supporting legal authority for its position. Id., citing Schellenberg v. Rochester Elks, 228 Mich.App. 20, 49, 577 N.W.2d 163 (1998).
*792 Defendants next argue that the trial court should have granted defendants' motion for a new trial on the ground that the verdict was against the great weight of the evidence. Defendants maintain that plaintiffs presented no facts to show that the injuries "resulted from" the negligent operation of the police vehicles under the decision in Robinson. Once again, having rejected application of Robinson, we find that defendants' argument lacks merit.
A grant of a new trial because the verdict was against the great weight of the evidence is disfavored, and the jury's verdict should not be set aside if there is competent evidence to support it; the trial court cannot substitute its judgment for that of the factfinder. Ellsworth v. Hotel Corp. of America, 236 Mich.App. 185, 194, 600 N.W.2d 129 (1999). If there is conflicting evidence, the question of credibility ordinarily should be left for the factfinder. Rossien v. Berry, 305 Mich. 693, 701, 9 N.W.2d 895 (1943).
We find that defendants have failed to properly present their issue for appeal and, therefore, have abandoned it, given their cursory discussion of the evidence presented at trial in relation to the state of the law under Rogers. Prince, supra at 197, 602 N.W.2d 834.
Moreover, review of the record reveals little support for defendants' position under the Rogers analysis. The officers' testimony established that they pursued McGuigan for approximately 1-1/2 miles down residential streets at high speeds during a time when it was reasonable to expect that children would be present and did not discontinue the chase until McGuigan had collided with Ewing. Officer Robbins testified that he tried to pass McGuigan at seventy miles an hour during the portion of the chase when he was the primary pursuer. Although, in their cursory discussion of this issue, defendants note that Officer Michael Malott's car was a block to a block and a half behind McGuigan when the collision occurred, the testimony indicates that McGuigan was traveling at between fifty-five and seventy miles an hour during that portion of the chase and that Officer Malott was keeping McGuigan in sight, thus supporting a finding that only seconds separated the two cars and refuting defendants' claim that there was "no police vehicle in the area" during the accident. In addition, Officer Malott contradicted his own testimony that he did not see the crash by admitting that he had previously testified that he did see it occur, by admitting that his recollection was fresher in 1991 when he made the previous statement, and by stating that he had no reason to lie in that statement.
Thus, after reviewing the record and applying the reasonableness factors concerning police pursuits as outlined in Fiser, supra, and reiterated in Rogers, supra,[8] we find nothing in the testimony clearly pointing to the reasonableness of the officers' conduct so as to support a determination that the verdict was against the great weight of the evidence. It can logically be said that, if the trial court itself is severely limited in its prerogative to second-guess the jury's finding of negligence after listening to the testimony presented, this Court should be even more deferential in that it has only the cold record before it. Competent evidence to suggest that the officers acted unreasonably under the circumstances *793 was presented at trial and, accordingly, the trial court did not err in refusing to grant defendants a new trial on the ground that the verdict was against the great weight of the evidence.
Defendants next argue that they were entitled to a new trial because the trial court erred in allowing plaintiffs to present in evidence the city's police pursuit policy. Defendants maintain that this evidence was inadmissible and defendants were unfairly prejudiced through the use of this policy as the applicable standard of care.
This Court reviews the trial court's decision to admit evidence for a clear abuse of discretion. Chmielewski v. Xermac, Inc., 457 Mich. 593, 614, 580 N.W.2d 817 (1998). In deciding whether the trial court has abused its discretion, this Court does not assess the weight and value of the evidence, but instead determines whether the evidence was a kind properly considered by the jury. Cole v. Eckstein, 202 Mich.App. 111, 113-114, 507 N.W.2d 792 (1993). However, any preliminary issue of law regarding admissibility is subject to review de novo. Kalamazoo Oil Co. v. Boerman, 242 Mich.App. 75, 78, 618 N.W.2d 66 (2000).
Generally, all relevant evidence, i.e., evidence that has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence, is admissible. MRE 401; MRE 402; Ellsworth, supra at 188-189, 600 N.W.2d 129.
We find that the trial court did not err in allowing evidence of the city of Detroit's police chase procedures to assist the jury in establishing the standard of care. In Rogers, supra at 146, 579 N.W.2d 840, the Supreme Court specifically discussed the use of internal police policy in determining the standard of care, stating: "We find it appropriate that the jurors were instructed to consider the police department policy, the officers' knowledge of the policy, the applicable statutes, and their own everyday experience. The department policy was relevant.... It was therefore properly admitted and properly used." (Emphasis added.)
The Rogers decision dealing with the "relevance" of evidence of standard police operating procedures was not directly implicated in Robinson and remains good law. The trial court did not err in allowing evidence of internal police procedures to assist the jury in determining the issues of proximate cause and negligence.
Defendants finally argue that a new trial was warranted because the jury was improperly instructed regarding the applicable standard of care. Defendants fault the trial court's reading of an instruction concerning the greater degree of care owed to plaintiffs given the law's recognition of children's "childish instincts and impulses." Defendants maintain that the instruction was inappropriate where plaintiff Thompson, a child, was not acting alone but was merely a passenger in the car driven by Ms. Ewing, an adult, and that this erroneous instruction was prejudicial because it impermissibly raised the standard of care.
On appeal, claims of instructional error are generally reviewed de novo. Case v. Consumers Power Co., 463 Mich. 1, 6, 615 N.W.2d 17 (2000), but see Hilgendorf v. St. John Hosp. & Medical Center Corp., 245 Mich.App. 670, 694-695, 630 N.W.2d 356 (2001). However, in a civil case, when requested by a party, a standard jury instruction must be given if it is applicable and accurately states the law. MCR 2.516(D)(2); Pontiac School Dist. v. Miller, Canfield, Paddock & Stone, 221 Mich.App. 602, 622, 563 N.W.2d 693 (1997). In that instance, the determination whether an instruction is accurate and applicable based on the characteristics of a *794 case is in the sound discretion of the trial court and is reviewed for an abuse of discretion, Stevens v. Veenstra, 226 Mich.App. 441, 443, 573 N.W.2d 341 (1997); Williams v. Coleman, 194 Mich.App. 606, 623, 488 N.W.2d 464 (1992), while a determination based on a legal issue is a question of law reviewed de novo, Hilgendorf, supra at 694-695, 630 N.W.2d 356.
Defendants maintain that the following jury instruction, based on SJI2d 10.07, was erroneously given by the trial court:
It was the duty of the city of Detroit's police officers and third party defendant McGuigan in connection with this occurrence to use ordinary care for the safety of plaintiffs. The law recognizes that children act upon childish instincts and impulses. If you find the defendant knew or should have known that a child or children were or were likely to be in the vicinity, then the defendant is required to exercise greater vigilance and this is a circumstance to be considered by you in determining whether reasonable care was used by the defendant.
In Bolser v. Davis, 62 Mich.App. 731, 733-734, 233 N.W.2d 845 (1975), addressing the above instruction, this Court held that the defendant's knowledge that there were homes along the road on which she was driving was a fact from which a jury could infer that she knew or should have known that a child or children were or were likely to be in the vicinity, and therefore the instruction was appropriate.
We do not find that the instruction was necessarily improper. Assuming that it was in error, it would not support reversal because the error was harmless. MCR 2.613(A); Case, supra at 6, 615 N.W.2d 17. SJI2d 10.07 instructs the jury to take into consideration, when determining whether a defendant used reasonable care, knowledge that children were likely to be in the vicinity. Here, plaintiffs offered testimony that the neighborhood was a residential one in which families with children were likely to be found, that there were schools in the vicinity, and that the chase took place just before 3:00 p.m. when one or more of the schools could have been releasing children onto the sidewalks. Rogers indicated that an appropriate factor for the jury to consider when determining the reasonableness of a pursuit included the "area of the pursuit." Rogers, supra at 144, 579 N.W.2d 840. It is logical to conclude that consideration of the factor would necessarily include consideration of the presence of children in the "area of the pursuit" in determining the reasonableness of the pursuit. Therefore, it was not improper for the jury to take the factor into consideration during deliberations regardless of whether the jury should have been specifically instructed pursuant to SJI2d 10.07. We find no error requiring reversal.

VI. Conclusion
We affirm the jury's verdict and the judgment rendered thereon because under the law of the case doctrine, Rogers is applicable, and pursuant to the legal principles enunciated in Rogers, defendants are not entitled to JNOV or a new trial. The verdict was not contrary to law or against the great weight of the evidence. Further, defendants are not entitled to a new trial, where the jury instruction pursuant to SJI2d 10.07 did not require reversal, and where admission of the internal police pursuit policy was proper.
Affirmed.
JANSEN, J., concurred.
KELLY, J (dissenting).
Because I believe that our Supreme Court's decision in Robinson v. Detroit 462 Mich. 439, 613 N.W.2d 307 (2000), constitutes *795 an intervening change in the applicable law precluding application of the law of the case doctrine, I must respectfully dissent.

I. Intervening Change in the Law and the Law of the Case Doctrine
Although the law of the case doctrine seeks to ensure consistency and to preserve finality of judgments by avoiding reconsideration of issues once decided during the course of a single, continuous lawsuit, this doctrine is not applicable where there has been an intervening change in the applicable law. Sumner v. General Motors Corp. (On Remand), 245 Mich.App. 653, 662, 633 N.W.2d 1 (2001). In the case sub judice, between the trial court's ruling denying defendants' motion for judgment notwithstanding the verdict (JNOV), a new trial, or remittitur and this Court's decision on appeal, an intervening change of law occurred, the application of which renders insufficient the proofs that plaintiffs submitted during the trial to avoid the bar to recovery imposed by governmental immunity.
The Robinson Court specifically overruled its prior decision in Rogers v. Detroit, 457 Mich. 125, 579 N.W.2d 840 (1998), thus clearly indicating that the precedent set forth in Rogers should no longer constitute the controlling law. See Sumner, supra at 665, 633 N.W.2d 1 (stating that the term "`overrule' is a term that `denotes what a superior court does to a precedent that it expressly decides should no longer be controlling law'"). (Citation omitted.) Because the decision by a superior court to overrule prior precedent is a declaration that the prior decision no longer holds precedential value, we are bound to abide by the new precedent established by our Supreme Court in Robinson.
The majority cites Bauer v. Garden City, 163 Mich.App. 562, 414 N.W.2d 891 (1987), for the proposition that an intervening change in the law does not necessarily vitiate application of the law of the case doctrine. However, the situation in Bauer was significantly different from that in the instant matter. In Bauer, the trial court granted the defendant city summary disposition, holding that the natural accumulation doctrine applied and thus precluded the plaintiff's recovery. Finding that the plaintiff stated a viable claim, on appeal, this Court reversed the trial court and remanded for further proceedings. The defendant city did not appeal this decision to our Supreme Court. Less than four weeks after this Court's decision, and before the second trial, our Supreme Court issued its decision in Ross, which, if applicable, would provide the defendant with governmental immunity and insulate it from liability.
The Bauer panel declined to apply the principles enunciated in Ross, stating: "To allow relitigation at the appellate level of every one of these cases which happened to remain at the trial level when Ross was decided would be imprudent indeed. Defendant had the opportunity to appeal this Court's decision and did not. Defendant is bound by that decision." (Emphasis added.) The crucial difference between the situation in Bauer and the situation in the case sub judice is that this case was not "at the trial level" when our Supreme Court issued its decision in Robinson. On the contrary, when Robinson came down, the trial was already concluded, the jury had already rendered its verdict, and the trial court had already denied defendants post-judgment relief. When our Supreme Court issued Robinson, the case at bar was already on appeal to this Court. Accordingly, there is no danger herein presented that relitigation at this level will occur; application of the law enunciated in Robinson completely eradicates plaintiffs' claim. Since the municipal defendants in *796 Bauer did not appeal the issue to our Supreme Court, despite its later decision in Ross, the law of the case doctrine applied and the defendants had to proceed to trial pursuant to the law pre-Ross.
Though certainly most sympathetic to plaintiffs' plight, I remain bound to apply the controlling law as set forth in Robinson to resolve the instant appeal. I therefore maintain that the decision in Robinson constitutes an intervening change in the law that precludes application of the law of the case doctrine.

II. Prospective or Retroactive Application
The general rule provides for full retroactive application of judicial decisions. Pohutski v. Allen Park, 465 Mich. 675, 696, 641 N.W.2d 219 (2002). However, where a judicial opinion is "unexpected" or "indefensible" compared to the law existing at the time that the underlying facts developed, then the decision that overrules clear and settled precedent may only be applied prospectively. See Lincoln v. General Motors Corp., 231 Mich.App. 262, 311, 586 N.W.2d 241 (1998) (Whitbeck, J., concurring) (citation omitted). In that situation, the decision overruling clear and settled precedent may have only prospective application. Id. On this point, the United States Supreme Court stated:
"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly fore-shadowed.... Second, it has been stressed that `we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighted the inequity imposed by retroactive application, for `[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'" [MEEMIC v. Morris, 460 Mich. 180, 189, 596 N.W.2d 142 (1999), quoting Chevron Oil v. Huson, 404 U.S. 97, 106-107, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).]
However, as our Supreme Court cautioned, "`[b]efore any question of the retroactive application of an appellate decision arises, it must be clear that the decision announces a new principle of law. A rule of law is new for purposes of resolving the question of its retroactive application ... when an established precedent is overruled....'" MEEMIC, supra at 191, 596 N.W.2d 142, quoting People v. Phillips, 416 Mich. 63, 68, 330 N.W.2d 366 (1982). (Emphasis added.) It thus bears repeating that complete prospective application of a judicial decision is justified where the decision at issue overrules "clear and uncontradicted case law." Hyde v. Univ. of Michigan Bd. of Regents, 426 Mich. 223, 240, 393 N.W.2d 847 (1986); Lincoln, supra at 310, 586 N.W.2d 241. (Emphasis added.)
To resolve the prospective-retroactive quandary, we must therefore first consider whether our Supreme Court's decision in Robinson, which explicitly overruled both Fiser and Rogers, thereby overruled clear and uncontroverted case law, rendering the decision "indefensible" in light of the existing law. I would find that it did not.
The broad construction of the statutory exceptions to governmental immunity employed in Fiser became especially vulnerable one year thereafter when our Supreme *797 Court issued Ross v. Consumers Power Co. (On Rehearing), 420 Mich. 567, 363 N.W.2d 641 (1984), its seminal governmental immunity case, which required courts to narrowly construe the statutory exceptions. As the Robinson Court observed:

Fiser was decided before this Court's seminal governmental immunity opinion in [Ross ] where we held that statutory exceptions to governmental immunity are to be narrowly construed. Previously, of course, this Court had given the exceptions broad readings.... Fiser may have been proper when decided, but it is no longer "good law" after Ross. [Robinson, supra at 455, 613 N.W.2d 307.]
The decision in Ross thus began the uncertainty in this area. The Ross decision requiring a narrow construction of the statutory exceptions directly conflicted with the Fiser Court's broader approach. Additionally, this Court consistently expressed its reluctance to apply the precedent established in Fiser but for its precedential value. See id. at 450, n. 9, 613 N.W.2d 307. After the decision in Ross, the law in this area became wholly unsettled.
Nevertheless, remaining faithful to the precedent established in Fiser, our Supreme Court issued its decision in Rogers and therein expanded the rule in Fiser, which further complicated the law in this area. However, just over one year after its decision in Rogers, our Supreme Court announced, sua sponte, that it was prepared to revisit this issue and thus replace ambiguity with clarity. In so doing, our Supreme Court issued an order requesting additional briefing on whether it should overrule both Fiser and Rogers, thereby foreshadowing their ultimate demise.
Considering the tumultuous history governing the construction of the statutory exceptions to governmental immunity, beginning with Ross and ending with Rogers, it cannot be seriously maintained that the precedent established by Fiser was clear and uncontroverted, see Robinson, supra at 450, n. 9, 613 N.W.2d 307, to such an extent that our Supreme Court's decision in Robinson had the effect of "changing the law" in this area. See MEEMIC, supra at 191, 596 N.W.2d 142. As the Robinson Court observed:
[T]he lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives....

* * *
We return the law, as is our duty, to what we believe the citizens of this state reading these statutes at the time of enactment would have understood the motor vehicle exception to governmental immunity and the ... governmental immunity act to mean. [Robinson, supra at 467-468, 613 N.W.2d 307 (emphasis added).]
Since Robinson did not overrule uncontroverted prior case law, but rather reaffirmed the existing law before its misinterpretation, it does not satisfy the threshold criterion for nonretroactive application. See MEEMIC, supra at 189, 596 N.W.2d 142. Consequently, the decision in Robinson was neither "unexpected" nor "indefensible" in light of the state of the law existing upon its decision. Absent a clear directive from our Supreme Court indicating that Robinson should be applied prospectively, I am constrained to follow the general rule providing for full retroactive application. Commensurate with the general rule, I would find that the decision in Robinson governs the disposition of the case sub judice.

*798 III. Defendant's Motion for JNOV
That established, upon review de novo of the record, the evidence submitted at trial does not demonstrate that the police cars involved in the chase struck plaintiffs' vehicle or the fleeing vehicle or physically caused another vehicle or object to hit the fleeing vehicle and does not otherwise establish that the police cars physically forced the fleeing vehicle off the road or into another vehicle or object. Thus, as a matter of law, plaintiffs cannot demonstrate that their injuries resulted from the operation of police vehicles sufficient to come within the purview of the motor vehicle exception to governmental immunity and no reasonable mind could find otherwise. Accordingly, I would reverse the trial court's decision denying defendants' motion for judgment notwithstanding the verdict.
NOTES
[1] Plaintiffs also filed suit against the individual officers involved in the police chase but these individual defendants were dismissed, and the dismissal is not at issue on appeal. Additionally, plaintiffs filed suit against McGuigan and obtained a judgment against him; however, McGuigan's whereabouts are unknown, and the trial court ruled that the judgment against him was uncollectible.
[2] Unpublished order of the Court of Appeals, entered July 6, 1994 (Docket No. 147294).
[3] For purposes of clarity in our opinion, we note that this Court's decision in Ewing v. Detroit (On Remand), 214 Mich.App. 495, 543 N.W.2d 1, is referenced as Ewing and our Supreme Court's decision in the present case, which it consolidated with Rogers v. Detroit, 457 Mich. 125, 579 N.W.2d 840, is referenced as Rogers.
[4] Unpublished order of the Court of Appeals (Docket No. 222092).
[5] We reject defendants' argument, made pursuant to Borkus v. Michigan Nat'l Bank, 117 Mich.App. 662, 324 N.W.2d 123 (1982), that the law of the case doctrine does not apply here because Rogers concerned a motion for summary disposition followed by a remand for trial. However, the Borkus panel rejected application of the law of the case doctrine because the prior appellate "[d]ecision did not determine the merits of plaintiff's or defendant's claim but only determined that factual questions existed." Id. at 667, 324 N.W.2d 123. This Court concluded that "[s]ince our first decision did not reach the merits of defendant's claimed defenses, the law of the case doctrine does not bar this appeal." Id. Here, the prior decision in Rogers did not merely determine that factual issues existed but also reached the merits of defendants' claimed defense based on their interpretation of M.C.L. § 691.1405 and request to modify or overrule Fiser. Rogers, supra at 128, 579 N.W.2d 840. Therefore, defendants' argument lacks merit. We also reject defendants' argument that the doctrine is not applicable because there has been a change of facts. Although we recognize that this case was before the Rogers Court based on documentary evidence presented at the hearing regarding the motion for summary disposition without the benefit of facts presented at trial, the facts actually presented at trial were materially the same as those considered in Rogers, and any differences were legally insignificant. See Muilenberg, supra at 641, 426 N.W.2d 767.
[6] In Stanton v. Lloyd Hammond Produce Farms, 400 Mich. 135, 147, 253 N.W.2d 114 (1977), the Michigan Supreme Court indicated that it is appropriate to look at the specifics of a particular case in determining retroactivity, wherein the Court stated that "in the instant case, considerations of justice and practicality do not warrant the limited effect of ... prospective application." See also Sturak v. Ozomaro, 238 Mich.App. 549, 561, 606 N.W.2d 411 (1999) ("We may also incorporate into our analysis any other facts or considerations relevant to the instant dispute that may affect the fairness of our determination."). In Sturak, id., this Court also stated that "[n]o specific factor will control, nor will any particular result necessarily prevail from decision to decision." In Lincoln, supra at 268, 586 N.W.2d 241, this Court stated, "as applied to this case, these principles [the three retroactive-prospective factors cited above] mandate the retroactive application...." We conclude that the case law allows us to limit our holding to the case at bar on the issue whether recently decided precedent should be given retroactive or prospective application.
[7] The Pohutski Court, supra at 697, 641 N.W.2d 219, stated: "First, we consider the purpose of the new rule set forth in this opinion: to correct an error in the interpretation of § 7 of the governmental tort liability act. Prospective application would further this purpose."
[8] These factors include: (1) whether there was an emergency, (2) the speed of the pursuit, (3) the area of the pursuit, (4) the weather and road conditions, (5) the presence of pedestrians and other traffic, (6) the presence or absence of audible and visible warnings, and (7) the reason the officers were pursuing the fleeing vehicle. Rogers, supra at 144, 579 N.W.2d 840, citing Fiser, supra at 472, 339 N.W.2d 413.