# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES OEGEMA, as conservator for ELEANOR
OEGEMA, a minor,

        Plaintiff-Appellant/Cross-Appellee,

v

PATRICIA BELL, D.O. and ALLIANCE
OBSTETRICS AND GYNECOLOGY, P.C.,

        Defendants-Appellees/Cross-
        Appellants,

and

EDWARD W. SPARROW HOSPITAL
ASSOCIATION,

        Defendant.

UNPUBLISHED
November 13, 2014

No. 316499
Ingham Circuit Court
LC No. 04-000280-NH

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Plaintiff, James Oegema, as conservator for Eleanor Oegema, a minor, appeals as of right the trial court's May 13, 2013 order, which entered a final judgment of no cause of action in favor of defendants, Patricia Bell, D.O. and Alliance Obstetrics and Gynecology, P.C.[1] We affirm.

Dr. Patricia Bell was employed as an obstetrician by defendant Alliance Obstetrics and Gynecology, P.C. in 1998 when she assisted Melanee Oegema in the preparation for and birth of her first child, Eleanor. During the delivery, Eleanor's shoulder became impacted on Melanee's pelvic bone and she suffered a shoulder dystocia. Dr. Bell was called to the delivery room where she witnessed the shoulder dystocia, which was evident when Eleanor's head retracted after Melanee pushed on a contraction. The shoulder dystocia can be relieved by certain maneuvers,

---

[1] Defendant, Sparrow Hospital, is not party to this appeal.

such as the McRobert's maneuver, suprapubic pressure, or the corkscrew maneuver, but, in this case, plaintiff alleged that these maneuvers were not performed and that Dr. Bell instead applied excessive traction to Eleanor's head and neck, resulting in a permanent and severe injury to the child's brachial plexus nerves, which disabled her right arm.

The jury returned a verdict of no cause of action, finding that none of the defendants were professionally negligent, after which, the trial court entered a judgment of no cause of action on October 9, 2008. Plaintiff moved for a new trial, arguing, among other things, that the verdict was against the great weight of the evidence. The trial court granted plaintiff's motion, finding that, in light of the other evidence presented, Dr. Bell's testimony regarding whether she performed the McRobert's maneuver was incredible.[2] Defendants appealed by leave granted[3] the trial court's order granting a new trial. This Court concluded that the trial court abused its discretion by improperly acting as a thirteenth juror when it substituted its judgment for that of the jury regarding Dr. Bell's credibility. *Oegema v Bell*, unpublished opinion per curiam of the Court of Appeals, issued April 30, 2013 (Docket No. 298114). Therefore, this Court "reverse[d] and remand[ed] for reinstatement of the jury verdict." *Id.* At the direction of this Court, the trial court reinstated the jury verdict and entered a final judgment of no cause of action in favor of defendants. Plaintiff then filed a claim of appeal, initiating the present appeal.

As an initial matter, we reject defendants' argument that this Court lacks jurisdiction over this appeal based on the principles of res judicata. Defendants correctly note that *Vanderwall v Midkiff*, 186 Mich App 191, 197-198; 463 NW2d 219 (1990), held that where a party could have raised an issue in a previous appeal by way of cross-appeal, and this Court reversed and remanded for reinstatement of the original judgment, the failure to raise the issue barred the party under res judicata from raising the issue in a new appeal filed after the reinstated judgment. However, in the previous appeal, defendants applied for leave to appeal an interlocutory order granting a new trial. That order set aside the jury verdict and the October 9, 2008 final judgment in favor of defendants. Thus, defendants cannot assert res judicata where they cannot establish that a final judgment was entered. *Andrews v Donnelly*, 220 Mich App 206, 209; 559 NW2d 68 (1996).

On appeal, plaintiff first argues that the trial court abused its discretion by denying his motion in limine to exclude evidence regarding consequences of waiting too long to deliver a child with a shoulder dystocia because it was irrelevant and prejudicial. We disagree. We review for an abuse of discretion a trial court's decision to grant or deny a motion in limine. *People v Vansickle*, 303 Mich App 111, 117; 842 NW2d 289 (2013). See also *Bartlett v Sinai Hosp of Detroit*, 149 Mich App 412, 416; 385 NW2d 801 (1986). "An abuse of discretion

---

[2] The trial court denied plaintiff's motion on the alternative grounds cited by plaintiff that there was evidence admitted that was unfairly prejudicial and that defense counsel's remarks during closing arguments were improper.

[3] *Oegema v Bell*, unpublished order of the Court of Appeals, entered September 29, 2010 (Docket No. 298114).

occurs when the decision results in an outcome falling outside the range of principled outcomes." *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013).

To be admissible, evidence must be relevant. MRE 402. " 'Relevant evidence' " means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Plaintiff sought to exclude evidence regarding hypoxia, severe neurological injury, and cerebral palsy, which can occur when a shoulder dystocia is not resolved within a certain number of minutes.[4] Plaintiff argued that there was no evidence whatsoever that the child was in fetal distress or at risk of oxygen deprivation, and thus, the evidence was irrelevant, not probative, and unfairly prejudicial. However, as the trial court correctly concluded, the evidence was necessary to explain why immediate delivery of Eleanor was necessary once she presented with a shoulder dystocia. The evidence was particularly relevant in light of plaintiff's theory that Dr. Bell was negligent because she delivered Eleanor too quickly, without performing any of the required maneuvers.

Contrary to plaintiff's argument, there is no indication that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The evidence certainly does not cast Dr. Bell in a heroic light, as plaintiff contends. Rather, the evidence explains why a doctor would want to resolve a shoulder dystocia as expeditiously as possible. It was necessary for the jury to hear this evidence to determine whether the traction Dr. Bell applied was necessary under the circumstances given the risks associated if the child was not delivered quickly, and if so, whether it was negligent. Even Dr. Wolf, one of the experts, testified that if a brachial plexus injury occurs because of traction during a shoulder dystocia event, it is not malpractice, and that 25% of children that are delivered with a shoulder dystocia suffer injury. Thus, contrary to plaintiff's argument, introduction of the evidence did not necessarily mislead the jury to believe that a damaged arm outweighed the risk of more severe injuries that could have resulted. Rather, the evidence puts into perspective a doctor's thoughts and actions when faced with that type of obstetrical emergency. Therefore, the trial court did not abuse its discretion by denying plaintiff's motion in limine.

Plaintiff next argues that the trial court erred by declining to grant plaintiff a new trial based on defense counsel's remarks during closing argument. We disagree. We review for an abuse of discretion the trial court's decision to deny plaintiff a new trial on this ground. *Zaremba Equip, Inc*, 302 Mich App at 21. Additionally, this Court reviews de novo claims of counsel misconduct to determine whether a party was denied a fair trial. *Moody v Home Owners Ins Co*, 304 Mich App 415, 445; 849 NW2d 31 (2014), citing *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 100; 330 NW2d 638 (1982).

---

[4] Expert testimony placed the range of minutes from "a few" to seven or nine minutes.

Plaintiff argues that the following remarks made during closing argument cast Dr. Bell as a hero and chastised the parents for being litigious.

> Dr. Bell did what she was trained to do, and that was to deliver a shoulder dystocia infant alive, with no brain damage, in the most expeditious fashion possible under the circumstances. And, what would happen if she didn't? What would happen if Dr. Bell said, you know, I think we've got two more minutes, let's spend some more time trying to get Ellie out. Two minutes passes, and they do get Ellie out, and Ellie does have brain damage?

> Do you think that we would be here, in the same courtroom with the same eight of you sitting there, and Mr. Ash would be saying, why did you wait so long, Dr. Bell? Why didn't you just break a clavicle? Why didn't you just use a little more force and get Ellie born, and maybe she'd have a brachial plexus injury, but she wouldn't have brain damage?

Following an objection by plaintiff's counsel that the trial court sustained, defense counsel proceeded to argue why a shoulder dystocia is an obstetrical emergency. In doing so, defense counsel stated,

> Now, Dr. Bell delivered Ellie, and Ellie was subsequently diagnosed to have a brachial plexus injury. No diagnosis of any other problem. No neurologic deficit, no cognitive deficit, no other problem. Dr. Wolf was asked, when you deliver— when you're confronted with this obstetrical emergency, and you deliver this youngster, if this youngster has a brachial plexus injury, does that automatically mean the doctor is negligent? And, he said no.

Defense counsel continued to argue that the goal with shoulder dystocia is to deliver the baby alive, without brain injury, and because Dr. Bell did just that, she could not be negligent. Defense counsel then stated,

> However, as her attorney, it's my obligation and my privilege to address all of the different issues, and one of the issues that has to be discussed is the issue of damages. Nobody, including myself, is standing up in front of you and telling that Ellie didn't experience an injury to her right arm at the time of her birth. Some may look at that and say, what a disaster. Others may look at it and say, Thank God that's what it was.

When analyzing claims of counsel misconduct, this Court must first determine whether an attorney's comments were improper, i.e., an error. *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). If the comments were error, this Court must then determine whether the error requires reversal. *Id.*

> An attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial. Reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved. [*Id.* (citations omitted).]

We conclude that defense counsel's comments were not improper. When read in context, the statements were commenting on the evidence introduced at trial and supported defendants' theory that Dr. Bell did not act negligently when she was faced with the obstetrical emergency because she acted promptly to prevent Eleanor from suffering the severe consequences that can result with shoulder dystocia when delivery takes more than a few minutes. Defense counsel was attempting to argue that Dr. Bell delivered Eleanor as she was trained to do when faced with such an obstetrical emergency, and that was to deliver Eleanor quickly to prevent brain damage.

Even if defense counsel's comments were improper, they would not require reversal. These comments do not indicate a "deliberate course of conduct aimed at preventing a fair and impartial trial." *Hunt*, 217 Mich App at 95. Rather, the comments were defense counsel's attempt to argue the evidence and defendants' theory of the case. There is no indication that the comments "reflect a studied purpose to inflame or prejudice a jury," *id.*, and plaintiff has not shown how they have a "controlling influence on the verdict." *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 192; 600 NW2d 129 (1999). Further, the trial court instructed the jury the attorneys' arguments were not evidence, which is sufficient to cure the alleged misconduct. *Moody*, 304 Mich App at 446 ("Proper instructions to the jury will cure most, but not all, misconduct by counsel."). Plaintiff was not entitled to a new trial on this ground.

Finally, defendants, on cross-appeal, argue that the trial court erred by granting plaintiff a directed verdict on causation. However, our resolution of the issues raised by plaintiff renders this issue moot and we need not address it.

Affirmed.


/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto