BROWNELL v BROWN

Docket Nos. 54782, 54783. Submitted December 1, 1981, at Grand
     Rapids.—Decided April 6, 1982. Leave to appeal applied for.

Harold W. Brownell, individually and as next friend of his
     daughter Iva K. Brownell, a minor, and another daughter,
     Marsha Brownell Wolfington, brought actions for injuries aris-
     ing out of an automobile accident against Douglas L. Brown
     and Shirley A. Brown in Ionia Circuit Court. The court, Gerald
     T. Graham, J., granted a directed verdict for the defendants.
     The plaintiffs appealed and the Court of Appeals in an unpub-
     lished opinion affirmed the decision of the trial court. The
     Supreme Court reversed the judgment of the Court of Appeals
     and remanded the case to the trial court for a new trial.
     *Brownell v Brown*, 407 Mich 128; 283 NW2d 502 (1979). On
     remand, the trial court entered judgment for the defendants on
     a jury verdict of no cause of action, Charles W. Simon, Jr., J.
     The plaintiffs appeal, alleging that the trial court erred: (1) in
     not excusing a prospective juror for cause; (2) in holding during
     the trial that if the plaintiffs continued to allege that defendant
     Douglas Brown had violated provisions of certain statutes, the
     defendants could introduce evidence to establish that no traffic
     citation was issued to Douglas Brown in order to refute those
     allegations; and (3) in giving its instruction to the jury on
     sudden emergency because the instruction on sudden emer-
     gency given by the trial court amounted to an instruction on
     imminent peril. *Held:*

     1. The challenged juror did not clearly fall within the ambit
     of the court rule pertaining to the excusing of jurors for cause.
     The trial judge had discretion to decide this issue and he did

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 213, 220.
[2] 29 Am Jur 2d, Evidence §§ 251, 334.
[3] 8 Am Jur 2d, Automobiles and Highway Traffic § 992.
[4] 5 Am Jur 2d, Appeal and Error § 625.
[5] 75 Am Jur 2d, Trial § 604.
[6] 57 Am Jur 2d, Negligence § 93.
   75 Am Jur 2d, Trial § 726.

not abuse his discretion in denying plaintiffs' challenge for cause.

2. The trial court's decision to admit evidence of Douglas Brown's not violating provisions of the statutes in question was erroneous. However, the error was harmless beyond a reasonable doubt.

3. The trial court did not err in giving the instruction on sudden emergency.

Affirmed.

1. Jury — Challenge for Cause — Court Rules.

A trial court is required to excuse a juror whenever a challenge for cause clearly falls within one of the several grounds enunciated by the Michigan court rules; such a showing is equivalent to a showing of bias or prejudice (GCR 1963, 511.4).

2. Evidence — Traffic Citations — Civil Actions — Substantive Evidence.

The issuance or nonissuance of a traffic citation should not be admissible as substantive evidence of conduct at issue in a civil case arising out of the same occurrence because it is irrelevant to a civil trial for damages.

3. Negligence — Rear-End Collisions — Statutes.

The statute creating a presumption of negligence in rear-end automobile collisions is not applicable in every negligence action involving a rear-end collision; instead, application turns on the facts adduced at the trial (MCL 257.402; MSA 9.2102).

4. Appeal — Preserving Question.

The failure of a plaintiff's attorney to make an offer of proof or a special record concerning a defendant's violation of a statutory provision precludes appellate review of the issue.

5. Trial — Jury Instructions — General Court Rules.

A trial court's discretion is required in determining whether a requested standard jury instruction is applicable and whether the instruction accurately states the law; jury instructions should be concise, understandable, conversational, unslanted, nonargumentative and modeled as nearly as practicable after the style of the standard jury instructions (GCR 1963, 516.6[2][4]).

6. Trial — Jury Instructions — Sudden Emergency — Standard Jury Instructions.

A trial court need not always base an instruction to the jury on sudden emergency excusing negligence on the part of a defen-

dant on the standard jury instruction regarding sudden emergency; the court should give the instruction only where it is applicable and where it accurately states the law (SJI 12.01).

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.,* for plaintiffs.

*O'Connor, McNamara & O'Keeffe,* for defendant.

Before: BEASLEY, P.J., and R. B. BURNS and M. B. BREIGHNER,* JJ.

M. B. BREIGHNER, J. This case makes its second trip up the appellate staircase. See 407 Mich 128; 283 NW2d 502 (1979). It is again before us after an Ionia County jury returned a verdict of no cause of action in the defendants' favor.

On October 23, 1970, at approximately 11 p.m., plaintiff Marsha A. Brownell Wolfington, then age 19, was the driver of a 1965 Chevrolet automobile owned by her father, plaintiff Harold Brownell. Five other teenage passengers, including Marsha's sister, plaintiff Iva Brownell, then age 15, were riding in the car. The other passengers were Patrick McGraw, then age 15 and seated in the right front seat, David Lee, then age 15 and seated in the right rear seat, Mary Flores, then age 14 and seated in the center rear seat, and Richard Spaans, then age 17 and seated in the left rear seat.

The Brownell vehicle was traveling at approximately 40 to 45 miles per hour northbound, when suddenly and without warning it went out of control. The vehicle swerved from one side of the road to the other, eventually running off of the east side of the road, striking a tree head-on. When the Brownell vehicle came to a stop, its rear

---

* Circuit judge, sitting on the Court of Appeals by assignment.

portion extended approximately two feet into the northbound lane of the road, with its front end near the tree it had struck. The tree was directly in front of the home of Mr. Herbert Dinning. Following the accident, the Brownell automobile was without operating lights.

Spaans and Lee escaped from the vehicle. After they tried unsuccessfully to open the front doors, Spaans pulled Miss Flores from the car and laid her in the ditch next to the vehicle. Spaans then went to the Dinning home to telephone police.

Spaans testified that after pulling Miss Flores from the car, he went to the Dinnings' house and telephoned the police. He said that when he asked to use the telephone, Lee was coming back out of the house. Lee told him that somebody had already called the police and summoned an ambulance. Consequently, Spaans simply called Harold Brownell, the owner of the car. After placing this telephone call, he returned to the disabled automobile.

Spaans stated that he started to step into the road when he saw another car heading toward the Brownell vehicle. Spaans said that the oncoming vehicle had its bright lights turned on. He further testified that when he saw the car's lights he went to the back of the Brownell vehicle and started waiving his arms to attract the driver's attention. He wore a white T-shirt and stood six feet four inches tall. Spaans opined that the oncoming vehicle was traveling at approximately 60 to 65 miles per hour. When he realized that the driver of the car did not see him or that he was not going to try to stop, Spaans ran around to the other side of the Brownell vehicle. He said that the vehicle driven by the defendant Douglas Brown then swerved a little, hit the back end of the Brownell car, pushed

it up against the tree again and rotated the Brownell vehicle around to where its front end was pointing in a southerly direction. Spaans was hit by the Brownell car when it was turning. The force of that collision knocked him into the ditch and broke his ankle.

Michigan State Police Trooper Dahl's previously recorded testimony was introduced into evidence and read to the jury. Trooper Dahl stated that defendant Douglas Brown had not been drinking, that the Brown vehicle left 66 feet of skid marks and came to rest approximately 175 feet from the Brownell vehicle. Dahl opined that the second impact, that of the two cars striking together, was a glancing blow and that the damage to the Brownell vehicle was caused by the undercarriage and trailer hitch on the Brown car. Dahl stated that there was no visible evidence that the Brownell vehicle was forced into the tree a second time and that he further believed that the headlights of a vehicle cresting the hill approximately 200 feet south of the accident scene would illuminate straight out until the automobile crested the hill and began descending on the accident scene.

Defendant Douglas Brown testified that when he saw Spaans in the road he swerved to the left and perhaps applied his brakes. He said that he was afraid of being hit by cars coming from the opposite direction so that after he swerved and thought he was past the Brownell vehicle, he attempted to get back into his own lane. Brown acknowledged that he hit the rear of the Brownell vehicle and slid into the opposite lane ending up in the ditch. Brown testified that he was traveling at between 45 and 50 miles per hour immediately prior to the crash. He believed that he was 50 or 60 feet from the Brownell vehicle when he first saw it.

The night of the accident was a clear night and the roadway was dry. There were no trees or other obstructions around the vicinity of the accident. Defendant Douglas Brown was a resident of the City of Ionia and was familiar with that portion of the street where the accident occurred.

Plaintiffs Iva Brownell and Marsha Brownell Wolfington were severely injured and plaintiff Harold Brownell suffered financial losses from the very large medical bills incurred.

During the voir dire, one of the prospective jurors stated that she and her husband were clients of attorney Rex P. O'Connor, a partner in the same law firm of which defendants' attorney was a member. The prospective juror, a Mrs. Schrauben, indicated that she and her husband were social acquaintances of attorney O'Connor.

After questioning this potential juror, plaintiff's attorney requested that he be allowed to approach the bench in order to challenge the prospective juror for cause outside of her presence and the presence of the rest of the panel. This request was denied. Plaintiffs' attorney then challenged Mrs. Schrauben on the record for cause on the basis that she was a client of an attorney involved in the case. The trial court again denied this challenge stating that Mrs. Schrauben had answered that her relationship as a client of defense counsel's law firm and as a personal friend of one of the partners in that firm would not affect her ability to sit as a fair and impartial juror. Plaintiffs' counsel then used his final peremptory challenge to excuse Mrs. Schrauben from the jury panel.

The plaintiffs argue that because they made a clear showing that the challenged juror fell within the ambit of GCR 1963, 511.4(10), the trial court

was without discretion and Mrs. Schrauben should have been excused.

The court rule, GCR 1963, 511.4(10), provides:

"Challenges for Cause. After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. Every challenge for cause shall be determined by the court. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. The following are grounds for challenges for cause:

*    *    *

"(10) that the person is the guardian, ward, landlord, tenant, employer, employee, partner, client, or member of the family of a party or attorney; * * *"

This Court discussed the issue in *McNabb v Green Real Estate Co,* 62 Mich App 500, 505-506; 233 NW2d 811 (1975). The *McNabb* Court ruled that GCR 1963, 511.4 "requires a court to excuse a juror whenever a challenge for cause clearly falls within one of the grounds" enumerated, those instances which are equivalent to showing bias at common law.

Like the *McNabb* Court, we too are persuaded that where the challenged juror is properly within the ambit of GCR 1963, 511.4(10), the trial court has no discretion and the challenged juror must be dismissed because bias is presumed, as it would be if a showing of actual bias had been made at common law.

We find that this case is distinguishable from the facts in *McNabb* and other cases where the judge does not have discretion. Mrs. Schrauben was not a client or friend of the defendants' trial counsel, Mr. O'Keeffe. Here, too, there was no evidence that Mrs. Schrauben answered untruthfully when questioned about any bias that she

might have had. See, *e.g., Gustafson v Morrison,* 57 Mich App 655, 659-661; 226 NW2d 681 (1975).

We conclude that the challenged juror in this case did not clearly fall within the coverage of GCR 1963, 511.4(10), and accordingly the trial judge did have discretion to decide this issue and that he did not abuse his discretion in denying plaintiffs' challenge for cause.

Following the trial court's ruling on the challenge to the potential juror, before opening remarks and while the jury was in recess, plaintiffs moved the court to rule on a previously filed motion *in limine* concerning the defendants' intention to introduce evidence that no traffic ticket had been issued to the defendant Douglas Brown by the investigating police officer at the time of the accident. The trial court denied plaintiffs' motion, ruling that if plaintiffs continued their allegations that defendant Douglas Brown had violated certain provisions of the Michigan Vehicle Code, MCL 257.627; MSA 9.2327 and MCL 257.402; MSA 9.2102, the defendants could introduce evidence to establish that no traffic citation was issued in order to refute those allegations.

Because it is irrelevant, evidence of the issuance of a traffic citation may not be admitted at a civil trial. *Kirby v Larson,* 400 Mich 585, 599-600; 256 NW2d 400 (1977). We see no logical difference between issuance or nonissuance of a traffic citation. Neither is relevant to a civil trial for damages.

The trial court's decision to admit this evidence was erroneous. We find the error harmless beyond a reasonable doubt. In the light of this ruling, plaintiffs did not proceed with their theory that defendant Douglas Brown had violated the statutes in question. However, we conclude from the

record before us that these provisions of the motor vehicle code were not applicable on the facts.

There was evidence that after the plaintiffs' car hit the tree in the initial collision it was without operating lights. Thus, the statute which would ordinarily allow for a prima facie showing of negligence as a result of this rear-end collision was specifically inapplicable. The statute, MCL 257.402; MSA 9.2102, provides:

"Sec. 402. (a) In any action, in any court in this state when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

"(b) This section may not be invoked by the owner of any vehicle, the rear of which was struck under the circumstances above mentioned, if the accident occurred between 1 hour after sunset and 1 hour before sunrise, and the vehicle so struck did not, at the time, have a lighted lamp or lantern reasonably visible to the drivers or vehicles approaching from the rear."

Statutes creating a presumption of negligence in rear-end collisions are not applicable in every case. Instead, application turns on the facts adduced at trial. Because the facts here would not support such a presumption at trial, or an instruction at the conclusion of trial as a matter of law, it would have been error on this record to have given such an instruction and the fact that the trial judge erred in his decision regarding the traffic summons is rendered harmless beyond a reasonable doubt.

*Zeni v Anderson,* 397 Mich 117, 140-142; 243 NW2d 270 (1976).

Moreover, failure of plaintiffs' counsel to make an offer of proof or a special record concerning the statutory violation precludes appellate review. *Duckett v North Detroit General Hospital,* 84 Mich App 426, 432; 269 NW2d 626 (1978), *Illenden v Illenden,* 46 Mich App 710, 714; 208 NW2d 565 (1973).

Finally, plaintiffs allege error in the trial court's instruction regarding sudden emergency, Michigan Standard Jury Instruction 12.02. Plaintiffs argue that the instruction regarding sudden emergency can only properly be given where the instruction would act to relieve a defendant from presumptive negligence. It is also argued that the instruction on sudden emergency given by the trial court amounted to an instruction on imminent peril. We disagree.

The trial court instructed the jury:

"Now, also in this case if you would find that the defendant was confronted with a sudden emergency, not on his own making; and if you find that he used ordinary care and was still unable to avoid the occurrence because of some emergency, then you will render a verdict in favor of the defendant and against the plaintiffs. One who suddenly finds himself in a place of danger and is required to act without time to consider the best means that may be adopted to avoid the impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method unless the emergency in which he finds himself is brought about by his own negligence."

Plaintiffs contend that the following instruction should have been given:

"In order for a sudden emergency to exist, it must be shown that the potential peril creating the emergency had not been in clear view for any significant length of time and was unusual and unexpected."

The court rule governing the use of the Standard Jury Instructions (SJI) mandates that the appropriate instruction shall be given if applicable and if the standard instruction accurately states the law. GCR 1963, 516.6(2). But the court rule does not strait-jacket a trial judge. The rule clearly and precisely gives the trial court discretion to fashion instructions "modeled as nearly as practicable after the style of the SJI, making them concise, understandable, conversational, unslanted and nonargumentative". GCR 1963, 516.6(4), *Socha v Passino,* 405 Mich 458, 467; 275 NW2d 243 (1979).

The trial judge gave a fair version of SJI 12.01(A), now SJI2d 12.02.[1] While the note on use urges that the instruction be given immediately following SJI 12.01, the instruction on statutory violation by a defendant, nothing in the statutes, court rules, case law or the Restatement Torts, 2d, § 288 suggests, as the plaintiffs argue here, that an instruction on "sudden emergency" must be given

---

[1] SJI 12.01(A) "However, if you find that defendant was confronted with a sudden emergency not of his own making and, if you find that he used ordinary care and was still unable to avoid the violation because of such emergency, then his violation is excused.

"If you find that defendant violated this statute and that the violation was not excused, then you must decide whether such negligence was a proximate cause of the occurrence."

"SJI2d 12.02 Excused Violation of Statute

"However, if you find that [defendant/plaintiff] used ordinary care and was unable to avoid the violation because of (state here the excuse claimed), then [his/her] violation is excused. If you find that [defendant/plaintiff] violated this statute and that the violation was not excused, then you must decide whether such violation was a proximate cause of the occurrence."

only to counter an instruction on a plaintiff's prima facie negligence.

In *VanderLaan v Miedema,* 385 Mich 226, 232; 188 NW2d 564 (1971), the Supreme Court set the limits of the sudden emergency rule:

"To come within the purview of this rule the circumstances attending the accident must present a situation that is 'unusual or unsuspected'. *Barringer v Arnold,* 358 Mich 594, 599 [101 NW2d 365] (1960).

"The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature. A classical example of the 'unusual' predicament envisioned by the emergency doctrine is provided by *Patzer v Bowerman-Halifax Funeral Home* [370 Mich 350; 121 NW2d 843 (1963)] *supra,* wherein the accident occurred amid an Upper Peninsula blizzard.

" 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic. To come within the narrow confines of the emergency doctrine as 'unsuspected' it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected. A good example of this can be seen in *McKinney v Anderson* [373 Mich 414; 129 NW2d 851 (1964)] *supra,* where defendant rear-ended a plaintiff's car which had stopped while pushing a disabled vehicle on the highway. Coming over the crest of a hill, defendant first saw plaintiff's taillights when he was 400 feet away. However, defendant did not clearly see the peril of plaintiff's stopping until he was about 100-200 feet away, at which point it was too late to avoid a collision under the circumstances. Furthermore, the failure of the plaintiff to signal that he was stopping, coupled with the surrounding darkness, made the subsequent peril totally unexpected to the defendant."

We hold that a trial court need not always base an instruction on "sudden emergency", excusing

negligence on the part of a defendant, upon a prior instruction under SJI 12.01. Rather, the court must give the instruction where it is applicable and where it accurately states the law. *Socha, supra,* GCR 1963, 516.6(2), *Cox v LaLonde,* 101 Mich App 342, 349; 300 NW2d 564 (1980).

Here, defendant Douglas Brown, just after cresting a hill, suddenly and unexpectedly encountered plaintiffs' unlighted disabled automobile, partly off the roadway. Michigan State Police Tooper Dahl opined that the headlights of an automobile traveling north, as defendant Douglas Brown's vehicle was on the night of the accident, might not have illuminated the accident scene until the driver was almost upon the disabled car. Also, Richard Spaans's testimony concerning his efforts to flag down defendant Douglas Brown's automobile as it approached lends credence to the emergency nature of the situation faced by defendant Douglas Brown as he came upon the accident scene. On these facts, the trial court properly gave defendants' requested instruction. There was no error.

Affirmed.