BARTLETT v SINAI HOSPITAL OF DETROIT

Docket No. 80750. Submitted December 10, 1985, at Detroit.—Decided February 19, 1986.

Julie Bartlett was injured in an automobile accident in Ohio. She was treated at a hospital there for approximately two weeks. Upon her return to Michigan, Bartlett was admitted to Sinai Hospital in Detroit after complaining of double vision, headache, and a brown discharge from her nose. The next day Bartlett lost all vision in her right eye when one of her treating physicians applied pressure to her eye with his thumb and index finger. Bartlett subsequently filed a medical malpractice action against Sinai Hopsital of Detroit in Wayne Circuit Court alleging that she would not have lost the vision in her right eye if her condition had been properly diagnosed. Prior to trial, plaintiff made a motion *in limine* seeking to exclude any reference by defendant to the existence of a pending malpractice lawsuit against the Ohio physicians who had treated her. The court, Henry J. Szymanski, J., denied the motion. Following trial, the jury returned a verdict of no cause of action. Plaintiff appealed. *Held:*

1. The trial court did not abuse its discretion by denying plaintiff's motion *in limine.*

2. The trial court did not abuse its discretion by denying plaintiff's motion for a new trial.

Affirmed.

1. MOTIONS AND ORDERS — NEW TRIAL.

The grant or denial of a motion for a new trial is within the sound discretion of the trial court.

2. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.

The Court of Appeals reviews a denial of a motion for a new trial to determine whether the verdict was against the overwhelming weight of the evidence.

REFERENCES

Am Jur 2d, New Trial §§ 17, 139, 183, 193.

Amendment, after expiration of time for filing motion for new trial, in civil case, of motion made in due time. 69 ALR3d 845.

3. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.
    An appellate court will give greater deference to a jury verdict
    than to a bench verdict on review of a denial of a motion for a
    new trial.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike* and *John A. Secrest*), for plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Anthony G. Arnone* and *Kenneth W. Empey*), for defendant.

Before: DANHOF, C.J., and J. H. GILLIS and M. WARSHAWSKY,* JJ.

PER CURIAM. Plaintiff appeals as of right from a judgment entered on a Wayne County Circuit Court jury verdict of no cause of action in this medical malpractice case.

Plaintiff alleged that she lost the vision in her right eye as a result of the care and treatment she received at defendant Sinai Hospital of Detroit on July 20 and 21, 1976. Plaintiff sustained an injury to the right side of her head and other injuries when she was involved in an automobile accident in Ohio on May 27, 1976. She was admitted to Blanchard Valley Hospital in Findlay, Ohio, and was treated there for approximately two weeks.

Plaintiff complained of double vision problems after she returned to Michigan. She scheduled an appointment for July 21, 1976, with an ophthalmologist, Dr. Lawrence Stocker. However, the day before her scheduled appointment, plaintiff awoke with a headache and had a brown discharge from her nose. She was examined at Dr. Stocker's clinic and then taken to defendant hospital. Plaintiff had vision in the right eye upon her admission. Plain-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff was examined by Drs. Migliori and Thale, two of defendant hospital's ophthalmological residents. Tomograms, a specific type of x-ray, were ordered, but could not be taken due to plaintiff's excited and anxious condition. Plaintiff remained hospitalized, and her condition worsened.

At approximately 5 a.m. on July 21, 1976, Dr. Thale examined plaintiff. Plaintiff testified that she lost all vision in her right eye when he applied pressure to it with his thumb and index finger. Plaintiff has not regained her vision in that eye.

Plaintiff's theory of the case was that she would not have lost the vision in her right eye if her condition had been properly diagnosed as orbital cellulitis instead of the incorrect diagnosis of retrobulbar hemorrhage. According to plaintiff, defendant hospital is an independent successive tortfeasor to the Ohio doctors and hospital which incorrectly diagnosed her condition initially. Defendant hospital's theory was that the blindness was an inevitable consequence of plaintiff's original injury in Ohio and was not the result of any malpractice by treating physicians in Michigan.

Prior to trial, plaintiff made a motion *in limine,* seeking to exclude any reference by defendant hospital to the existence of a pending malpractice lawsuit against the Ohio physicians. The trial court denied plaintiff's motion. The trial court suggested that the existence of that lawsuit might be properly placed before the jury through proper cross-examination of plaintiff depending upon the scope of plaintiff's testimony on direct examination. The trial court cautioned defense counsel that the Ohio lawsuit was not to become a principal factor in the trial.

In opening statement, plaintiff's counsel explained that the Ohio doctors had failed to properly diagnose a blow-out fracture of the orbital

floor of plaintiff's right eye. Near the close of defendant's opening statement, defense counsel noted that plaintiff originally filed a lawsuit against defendant hospital in 1977 and that she also had a pending lawsuit in Ohio against the physicians who treated her initially.

Although plaintiff's testimony on direct examination made no reference to her treatment by Ohio physicians, defense counsel on cross-examination asked if she believed her problems were the result of the Ohio physicians' failure to diagnose a fracture of the orbital floor. Plaintiff responded in the negative. Defense counsel then asked whether she had filed a lawsuit against the Ohio hospital and physicians, alleging that as a result of their negligence she lost the vision in her eye. Plaintiff acknowledged that a lawsuit had been filed. No objection was raised to these questions.

In closing argument, defense counsel stated:

"So, why isn't anybody else here? Ask yourselves that question. If they're really serious about this, if they're really serious about their case, why have they sued in Ohio and maintained that cause of action alleging that this treatment caused the loss of this eye, if they're serious about that, this case?

"Do not get me wrong. I'm not saying Doctor Lerner did anything wrong. I'm not saying that the doctors at Blanchard Valley did anything wrong here. It's not my function as an attorney. I have a client, and that's what who [sic] I'm representing. My client is Sinai Hospital. And I know they didn't do anything wrong."

In rebuttal, plaintiff's counsel responded:

"Secondly, Mr. Arnone has told you about an Ohio lawsuit. Let's go back several days ago and listen to what we all heard. You remember when he had Julie on the stand, and he said: 'Isn't it true that you were in Blanchard Valley Hospital and your lawyers'—that's

me and Mike—'started a lawsuit down there?' She said,
'That is right.' And, he said, 'Here, I show you the
complaint.' Remember? She sat there, my goodness for
five minutes looking it over. She didn't draft it, I did.
And then, finally, I said, 'Well, what's the purpose? You
want to admit that complaint and let the jury read it,
put it in evidence?'

"No, I withdraw it.

"And, now, in final argument he is bringing up that
possibly something is wrong. We're doing something
bad by doing that. You can bet your bottom dollar,
ladies and gentlemen, that if we were doing something
bad, something wrong, something not in accordance
with the laws, that we would not get away with it in
front of this judge."

Plaintiff's first claim on appeal is that error
occurred when the trial court denied her motion *in
limine* to completely exclude any reference to her
pending lawsuit in Ohio. She argues that the fact
of the pending lawsuit was irrelevant to the issues
raised in this litigation, and further, that the
references to the Ohio lawsuit were prejudicial
because they misled and confused the jury. Thus,
plaintiff argues, the trial court's ruling was an
abuse of discretion.

Defendant hospital argues, just as it did below,
that the references to plaintiff's pending lawsuit in
Ohio are relevant to the issues of damages, proxi-
mate cause, and plaintiff's state of mind as to the
cause of her blindness. According to defendant,
although the references may have damaged plain-
tiff's case, they were not unfairly prejudicial.

MRE 401 defines relevant evidence as evidence
having any tendency to make the existence of any
fact that is of consequence to the determination of
the action more probable or less probable than it
would be without the evidence. All relevant evi-
dence is admissible except as otherwise provided

by either the federal or state constitution or the rules of evidence. MRE 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, waste of time or misleading the jury. MRE 403.

The references to the Ohio lawsuit in defendant hospital's opening statement and the parties' closing arguments are not evidence, and the trial court properly instructed the jury on that point. Further, the trial court instructed the jury that if they found that defendant hospital's negligence was a proximate cause of plaintiff's injury, it was not a defense that the conduct of either Dr. Lerner, who was not a party to the lawsuit, or of the previous treating physicians or hospitals in Ohio also might have been a cause of plaintiff's injury. The references to the pending Ohio lawsuit were limited in scope and number. These references were not sufficiently prejudicial so as to require a new trial. *Lincoln v Gupta,* 142 Mich App 615, 623; 370 NW2d 312 (1985). These references were not inconsistent with substantial justice. GCR 1963, 529.1.

The questioning of plaintiff on cross-examination about the Ohio lawsuit was proper under MRE 611(b) provided that it was "relevant to any issue in the case". The fact of the Ohio lawsuit may have had a minimal tendency to make the existence of a fact of consequence to the determination of the instant action more or less probable than without it. Even if it had no probative value and it was error to allow that fact to come before the jury, any error was harmless. Compare, *Brownell v Brown,* 114 Mich App 760, 767-768; 319 NW2d 664 (1982). We cannot say that the evidence created prejudicial error affecting the substantial rights of the parties. Our review of the record reveals that

the applicable standard of care and the breach thereof were the major issues in dispute. We conclude that the trial court did not abuse its discretion by denying plaintiff's motion *in limine.*

Plaintiff next contends that the jury verdict was against the great weight of the evidence, a claim which was properly preserved for appellate review by a motion for a new trial below. *Arnsteen v U S Equipment Co,* 52 Mich App 177, 179; 217 NW2d 61 (1974). The grant or denial of a motion for a new trial is within the sound discretion of the trial court. *Isom v Farrugia,* 63 Mich App 351, 355; 234 NW2d 520 (1975). This Court reviews a denial of such a motion to determine whether the verdict was against the overwhelming weight of the evidence. *Id.* An appellate court will give greater deference to a jury verdict than to a bench verdict on review of a denial of a motion for a new trial. *Schneider v Pomerville,* 348 Mich 49, 54-55; 81 NW2d 405 (1957).

Although plaintiff presented several witnesses, including three expert witnesses, and defendant presented only one witness, much of the testimony of plaintiff's witnesses favored defendant. Plaintiff's first witness, Dr. Shan Baker, testified that Dr. Thale breached the applicable standard of care when he failed to diagnose orbital cellulitis based upon the symptoms manifested by plaintiff. However, on cross-examination, Dr. Baker admitted that even if plaintiff's condition had been properly diagnosed, it could not be said whether an antibiotic treatment would have been effective in curing her condition. Further, defense counsel strongly challenged his qualifications as an expert, which would have detracted from the weight accorded his testimony by the jury. Another witness offered by plaintiff, Dr. Lawrence Stocker, testified that in his opinion there was nothing else Dr. Thale could

have done in treating plaintiff that was not done. He could not say whether an earlier correct diagnosis of plaintiff's condition would have saved her vision in the right eye. Defendant's witness, Dr. Hesberg, testified that the original diagnosis of a vascular abnormality was consistent with the required standard of care and that Dr. Thale acted in a manner consistent with that standard. He opined that the use of antibiotics was never indicated and that, even if infectious cellulitis had been the cause of plaintiff's problems, the effectiveness of antibiotics to treat that condition would be purely a matter of speculation. We conclude that the trial court did not abuse its discretion by denying plaintiff's motion for a new trial.

Affirmed.