# S T A T E  O F  M I C H I G A N

# C O U R T  O F  A P P E A L S

RONALD BROWNLOW and SUSAN TRAVIS,

          Plaintiffs-Appellants,

v

MCCALL ENTERPRISES, INC. d/b/a PAUL
DAVIS RESTORATION OF WASHTENAW
COUNTY,

          Defendant-Appellee,

and

STATE FARM FIRE & CASUALTY
COMPANY,

          Defendant.

FOR PUBLICATION
April 19, 2016
9:05 a.m.

Nos. 325843 & 326903
Washtenaw Circuit Court
LC No. 10-000049-NZ

Before: GLEICHER, P.J., and MURPHY and OWENS, JJ.

PER CURIAM.

      In this consolidated appeal, plaintiffs appeal as of right two orders entered by the trial court. The first, in Docket No. 325843, is a July 29, 2015 final order granting summary disposition in favor of defendant, McCall Enterprises, Inc.,[1] and dismissing plaintiff Travis's claim for damages under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. The second, in Docket No. 326903, is a March 27, 2015 order granting defendant attorney fees and costs as case evaluation sanctions against plaintiff Travis. Prior to entering its final order granting summary disposition in favor of defendant and dismissing plaintiff Travis's claim for damages under the MCPA, the trial court entered a June 12, 2014 order dismissing plaintiff Brownlow as a party in the case. The trial court then entered an October 3, 2014 order granting defendant attorney fees and costs as case evaluation sanctions against plaintiff Brownlow. These two orders are also challenged on appeal. In Docket No. 325843, we reverse the trial court's order granting summary disposition in favor of defendant. We also reverse the trial court's order

---

[1] State Farm is not a party to this appeal. Defendant refers to McCall Enterprises.

-1-

dismissing plaintiff Brownlow as a party, as well as the order awarding defendant case evaluation sanctions against plaintiff Brownlow. In Docket No. 326903, we reverse the trial court's orders granting case evaluation sanctions against plaintiff Travis.

This case was previously before this Court in *Brownlow v McCall Enterprise, Inc*, unpublished opinion per curiam of the Court of Appeals, issued February 12, 2013 (Docket Nos. 306190 & 307883). A small fire occurred in plaintiffs' microwave on March 12, 2007, which filled plaintiffs' house with smoke. Plaintiffs filed a claim with their insurer, State Farm, who retained defendant to remove the smoke odor from plaintiffs' house. Defendant placed an ozone generator in plaintiffs' kitchen, turned it on, and let it run for 24 hours. Plaintiffs were instructed to leave for the weekend, and when they returned, the smoke odor was gone, but there was significant damage to the inside of the house, particularly to carpet, upholstery, wood, plastic, and rubber surfaces. Plaintiffs also alleged that they suffered health problems as a result of the ozone exposure.

Plaintiffs filed a complaint against State Farm and McCall Enterprises, alleging that they sustained personal injuries and property damage from excessive ozone exposure, and asserting claims for negligence and violations of the MCPA. The negligence claims were dismissed, which plaintiffs did not appeal. The trial court also dismissed the MCPA claim, concluding that the transaction was specifically authorized by defendant's contractor license, and thus exempt from the act under MCL 445.904(1)(a), which provides that the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Plaintiffs appealed the dismissal of their MCPA claim.

This Court reversed the trial court's decision granting summary disposition, concluding that the general transaction of cleaning a house was not specifically authorized by defendant's contractor license, and thus, not exempt from the act. *Brownlow*, unpub op at 3-4. This Court also addressed defendant's alternate argument supporting summary disposition—that plaintiffs could not establish causation under the MCPA. *Id.* at 4-6. This Court rejected defendant's argument, finding that plaintiffs presented "sufficient evidence for a jury to conclude that the ozone generator caused the damage to plaintiffs' house without resort to speculation." *Id.* at 6. Specifically, this Court concluded that plaintiffs did not need to establish the precise amount of ozone that was released into their house in order to establish that the ozone caused the damage. *Id.* at 5. The literature and expert reports provided by plaintiffs supported the conclusion that ozone can damage household materials, and the damage plaintiffs alleged was consistent with ozone exposure. *Id.* at 5-6. Our Supreme Court denied leave to appeal. *Brownlow v McCall Enterprises, Inc*, 495 Mich 852; 836 NW 2d 167 (2013).

The case was remanded to the trial court where defendant moved in limine to preclude claims for personal property damages and use and enjoyment. Defendant argued that this Court's prior opinion specifically limited plaintiffs' MCPA claim to damages to their "house," which implicitly included only the realty. Defendant also requested that the trial court dismiss plaintiff Brownlow as a party to the action because he did not have a legal interest in the house and, therefore, did not have standing to assert a claim for real property damages. The trial court granted defendant's motion and ordered that plaintiff Travis was precluded from presenting proof of damages to personal property and for use and enjoyment of the property and that

plaintiff Brownlow be dismissed from the action. The trial court also granted defendant's motion to award it attorney fees and costs as case evaluation sanctions against plaintiff Brownlow.

Defendant then moved for summary disposition pursuant to MCR 2.116(C)(10) on the MCPA claim, arguing that plaintiff Travis could not prove causation because there was no evidence that the ozone generator did in fact generate harmful levels of ozone in the house. Defendant argued that a test of the machine, conducted years later, revealed that it was broken and incapable of producing ozone. Defendant also argued that the new experts plaintiffs substituted following the death of two of their previous experts were not qualified to provide expert testimony regarding causation. Specifically, defendant argued that the new experts did not have experience with an ozone generator and they did not calculate the ozone levels in the house. Plaintiff Travis filed a counter-motion for partial summary disposition regarding liability.

The trial court issued a written opinion finding that plaintiff Travis's experts were not qualified to opine on causation because, among other things, they did not have experience with the type of ozone generator used in this case or they were unable to testify regarding the ozone concentration in the house. The trial court concluded that plaintiff Travis failed to offer evidence through affidavits, depositions, or exhibits sufficient to establish a causal connection between the use of the ozone generator and the damage to the house, and therefore, granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10). It also denied plaintiff Travis's counter motion for partial summary disposition. The trial court later granted defendant's motion for case evaluation sanctions against plaintiff Travis. Plaintiffs then filed the present appeal.

First, plaintiffs argue that the law of the case doctrine precluded the trial court from considering defendant's second motion for summary disposition on the issue of causation where this Court previously ruled that there was sufficient evidence of causation to go to a jury. "The law of the case doctrine provides that a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue[,]" provided that the facts remain materially the same. *Driver v Hanley*, 226 Mich App 558, 565; 575 NW2d 31 (1997). The doctrine's purpose "is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing." *South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 654; 625 NW2d 40 (2000).

Defendant cites *Brown v Drake-Willock Int'l, Ltd*, 209 Mich App 136, 144; 530 NW2d 510 (1995), citing *Borkus v Mich Nat'l Bank*, 117 Mich App 662, 666; 324 NW2d 123 (1982), for the principle that "[w]hen this Court reverses a case and remands it for a trial because a material issue of fact exists, the law of the case doctrine does not apply because the first appeal was not decided on the merits." Defendant argues that because this Court's prior decision resulted in a remand for trial predicated on the existence of a genuine issue of material fact regarding causation under the MCPA, the law of the case doctrine is not implicated because the first appeal was not decided on its merits. Defendant, however, misinterprets *Brown* and *Borkus*.

In both *Brown* and *Borkus* on which *Brown* relied, this Court did not make a ruling on a question of law before reversing the trial court's grant of summary disposition; it simply ruled that factual questions existed which precluded summary disposition. In its prior decision in this case, it was not merely the existence of factual questions that occasioned this Court's remand

order, unlike in *Brown* and *Borkus*. Rather, this Court ruled as a matter of law that the transaction at issue fell under the MCPA, and that ruling was necessary to this Court's determination that the trial court had erred in granting summary disposition, particularly where the trial court held that the transaction was exempt from the MCPA and did not address whether plaintiffs proved causation under the MCPA. It was the decision that the MCPA applied as a matter of law that primarily necessitated this Court's remand, and it was then left to the trier of fact to resolve the question of causation under the MCPA.

Further, in *Borkus*, this Court initially reversed because factual questions existed. *Borkus*, 117 Mich App at 667. On remand to the trial court, a bench trial was held. *Id.* at 665. Defendant appealed the trial court's ruling and plaintiff argued that the law of the case doctrine barred this Court from considering the issues raised by defendant. *Id.* at 666. However, because this Court's earlier decision in *Borkus* simply ruled that factual questions existed which precluded summary disposition, it remanded the case without addressing the merits of defendant's claims raised in the first appeal. *Id.* at 666-667. Therefore, defendant was free to raise the issues in the second appeal, following the bench trial, because they were never addressed by this Court previously. Clearly, the law of the case doctrine would not apply to claims that were not decided on the merits, thus leading to this Court's statement, "Where an order of summary judgment is reversed and the case is returned for trial because an issue of material fact exists, the law of the case doctrine does not apply to the second appeal because the first appeal was not decided on the merits." *Id.* at 666.

In *Brown*, plaintiff argued that the law of the case doctrine precluded defendants from relitigating the issue of duty to warn. *Brown*, 209 Mich App at 144. This Court stated that plaintiff misunderstood this Court's prior decision. *Id.* Specifically, this Court did not previously rule that the defendants, as manufacturers, had a duty to warn of the dangers of formaldehyde. *Id.* Rather, this Court held that factual questions existed with regard to whether use of formaldehyde as a cleaning agent was foreseeable which precluded summary disposition. *Id.* It was that ruling which occasioned this Court's remand order. *Id.* This Court did not decide the merits of plaintiff's claim regarding the duty to warn of the dangers of formaldehyde, so logically, the law of the case doctrine would not apply, thus leading to the *Brown* Court's citation of *Borkus*, stating, "When this Court reverses a case and remands it for a trial because a material issue of fact exists, the law of the case doctrine does not apply because the first appeal was not decided on the merits." *Id.*

It is too broad to read *Brown* and *Borkus* as barring the application of the law of case doctrine whenever there is a grant of summary disposition based on the presence of factual questions, and doing so undermines the doctrine's purpose and effectively eviscerates it. As can be understood by the facts of *Brown* and *Borkus*, the principle defendant cites from those cases merely indicates that the law of the case doctrine does not apply to issues that were never decided by this Court. That principle applies to situations where this Court merely remands because factual questions existed and never addresses issues raised in the second appeal. Notably, in both *Brown* and *Borkus*, the parties were not relitigating the issue on which this Court previously remanded because factual questions existed. Rather, they were challenging other issues that were raised in the first appeal but never decided by this Court.

-4-

In its prior decision in this case, this Court clearly determined that the issue of causation should go to the jury. Nevertheless, in moving for summary disposition a second time, defendant relitigated the issue of causation. The law of the case doctrine clearly precluded defendant from doing so, and it was error for the trial court to consider defendant's motion.

We also reject defendant's argument that the law of the case doctrine does not apply because the facts have materially changed. *South Macomb Disposal Auth*, 243 Mich App at 655; *Driver*, 226 Mich App at 565. Defendant argues that the facts materially changed because of the substitution of new expert witnesses whose opinions were speculative and because the ozone generator was broken when it was tested years after the incident.

First, although this Court in its earlier decision did not have the benefit of the new experts' opinions, any differences between the experts' opinions that this Court cited in its earlier opinion and the new experts' opinions were legally insignificant and did not materially change the facts of the case. See *Ewing v Detroit*, 252 Mich App 149, 164 n 5; 651 NW2d 780 (2002), judgment rev'd on other grounds 468 Mich 886 (2003) (finding that the law of the case doctrine applied where the facts remained materially the same and any differences were legally insignificant). The deaths of Verne Brown and Roger Wabeke following this Court's remand prompted plaintiffs to substitute new experts. In its earlier opinion, this Court noted that Wabeke focused on the health risks of ozone and opined that defendant should have warned plaintiffs of possible damage to materials from ozone. This Court also pointed to Brown's affidavit in which he stated that the damages to plaintiffs' house were consistent with ozone exposure and explained how he concluded that the ozone levels in the house were high enough to cause the damage. The new experts plaintiffs substituted were able to opine that the damage to plaintiffs' house was consistent with ozone exposure. For example, Douglas A. Haase testified that things that are more organic are more reactive with ozone, such as carpet, which was damaged in plaintiffs' house. According to Jeffrey A. Siegel, ozone is ten times more likely to react with materials in a house than it is to ventilate. Siegel also testified that the photos he viewed of the damage to plaintiffs' house showed "very stereotypical degradation patterns" from ozone.

Further, defendant spends a great deal of time arguing over the fact that the level of ozone concentration in the house was unknown and that plaintiffs' new experts could not opine as to the level of ozone concentration in the house, as Brown was able to do. Brown's calculation of the ozone levels in plaintiffs' house, however, is not necessary for plaintiffs to establish causation. As this Court stated in the prior opinion, this fact is irrelevant. *Brownlow*, unpub op at 5. Plaintiffs do not need to establish the precise amount of ozone released into their house to infer causation. *Id.* It was undisputed that defendant placed an ozone generator in plaintiffs' house on Friday and set it to an output of "8" on a scale of 0 to 10. Plaintiffs were instructed to leave for the weekend and returned on Monday to discover extensive interior damage to a variety of surfaces, including carpet, upholstery, wood, brick, plastic, and rubber. Plaintiffs presented evidence, through their experts and literature, that ozone reacts with these various organic materials, and defendant does not dispute that ozone can cause damage to building materials, as well. As this Court previously concluded, this is enough to infer causation without speculating. These facts remained materially the same and were not affected by the substitution of new experts, particularly where, as discussed, the new experts were able to opine that the damage to plaintiffs' house was consistent with ozone exposure. Once this Court concluded that plaintiffs established a prima facie case of causation under the MCPA to warrant

-5-

a trial, plaintiffs were entitled to prove their case how they saw fit. The experts' opinions simply go to the weight of the evidence presented at trial.

Defendant also seems to argue that because the new experts could not rule out other causes of damage to plaintiffs' house, the facts materially changed, particularly in light of this Court's statement in its earlier decision that no witness had advanced any possible cause of the alleged damages other than ozone exposure. See *Brownlow*, unpub op at 6. Plaintiffs' new experts, however, merely acknowledged that there could be other possible factors which caused plaintiffs' damages, but they could not say with reasonable certainty whether these other factors in fact caused the damages. David O. Peters, a residential builder who did not have any experience with ozone, testified that various things can affect the condition of building materials, including age, ultraviolet light, and humidity. However, his testimony suggested that he had never seen these factors result in damages like those that he observed at plaintiffs' house. Additionally, Siegel could not rule out that age or ultraviolet rays damaged the carpet with "perfect certainty," but the damage was certainly consistent with ozone exposure, and he stated that ozone was the likely cause. Again, the experts' opinions go to weight of the evidence presented at trial and do not materially change the facts.[2]

Second, the fact that the ozone generator was broken when it was tested six years after the incident did not materially change the facts. Rather, it goes to the weight of the evidence at trial. Simply because the generator was broken six years after the incident does not automatically mean that the machine was not operating properly when it was placed in plaintiffs'

---

[2] In reaching our decision, we reject defendant's argument that the trial court determined that plaintiffs' new experts were not qualified to opine pursuant to *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). The trial court never held a *Daubert* hearing to determine the qualifications of plaintiffs' experts, nor did defendant request a hearing. Rather, defendant filed a supplemental brief in support of its second motion for summary disposition, in which it asserted that the new experts were not qualified to provide expert testimony regarding causation. In ruling on the motion for summary disposition, the trial court concluded particularly with respect to both Haase and Siegel, plaintiffs' only expert witnesses on the direct issue of causation, that they were "not qualified to offer expert testimony as to causation." However, this finding was not made pursuant to *Daubert*. Rather, when examining the trial court's reasoning, it is clear that the trial court primarily found that Haase and Siegel were not qualified to render an opinion regarding causation because they would need to speculate regarding the amount of ozone output from the machine and the level of ozone concentration in the house. As this Court previously ruled, however, plaintiffs do not need to establish the precise amount of ozone that was released into the house to establish the casual link between the ozone and the alleged damages. Further, to the extent that the trial court relied on other findings to conclude that Haase and Siegel were not qualified to offer expert testimony regarding causation, such as the lack of experience with the type of ozone generator used in this case, those findings were inadequate to conclude that they were not qualified to render an expert opinion pursuant to *Daubert*. Rather, the trial court's findings went to the issue of the weight of their testimony and not their qualifications.

house. This is particularly true where there is no indication based on the testimony of defendant's employee that the generator was not operating as intended when he placed it in plaintiffs' house, where the ozone generator had successfully removed the smoke odor, and where plaintiffs presented evidence that the damage to their house was consistent with ozone exposure.

Therefore, we conclude that the law of the case doctrine applies to the issue of causation. The trial court erred by finding that defendant could seek summary disposition regarding causation after this Court previously ruled that there was sufficient evidence of causation to go to a jury. Accordingly, we reverse the trial court's grant of summary disposition.

Next, plaintiffs argue that the trial court abused its discretion in granting defendant's motion in limine to exclude damage to personal property. A trial court's decision to grant or deny a motion in limine is reviewed for an abuse of discretion. *Bartlett v Sinai Hospital of Detroit*, 149 Mich App 412, 418; 385 NW2d 801 (1986). The abuse of discretion standard recognizes that if there is more than one reasonable and principled outcome, a trial court does not abuse its discretion if it selects one of those outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

The trial court determined that this Court's decision in the earlier appeal limited the MCPA claim to damage to real property only, and therefore, it was bound by the law of the case doctrine. Specifically, the trial court determined that this Court's use of the term "house" limited damages to "the structure itself," and implicitly excluded plaintiffs' claims for personal property damage and quiet enjoyment from being considered on remand.

The law of the case doctrine applies "only to issues actually decided, either implicitly or explicitly, in the prior appeal." *Grievance Administrator v Lopatin*, 462 Mich 235, 260; 612 NW2d 120 (2000). The issue of whether plaintiffs' claim for property damage under the MCPA was limited to real or personal property was never before this Court previously, and this Court did not implicitly or explicitly decide that issue.

In its opinion, this Court interchangeably used the terms "home" and "house" and only referred to damage as "property" damages. Additionally, this Court implicitly referenced damage that occurred to plaintiffs' personal property. For example, this Court determined that there was sufficient evidence that ozone can damage building and *household* materials. *Brownlow*, unpub op at 5. This evidence included plaintiffs' testimony that after the ozone machine had been running for the weekend "a variety of exposed surfaces—including carpet, upholstery, wood, brick, and plastic—had been damaged. Among other things, finish had come off of wood, furniture changed color, bricks were crumbling, plastic had aged, and carpets were sticky." *Id.* at 5-6.

Contrary to the trial court's determination, there was no need for this Court to be specific with regard to the types of property, when the issue of whether the MCPA claim was limited to real or personal property was not before this Court. Plaintiffs' claim under the MCPA involved *property* damage to their *house*, and plaintiffs' complaint made it clear that this included real and personal property—a fact acknowledged and not contested by defendant in the prior appeal. Finally, "house" is defined as "a building in which people live; residence," or "a household."

*Random House Webster's College Dictionary* (2001). The definition in no way restricts the term to "the structure itself" or "realty," as the trial court defined it.

Therefore, the trial court abused its discretion by granting defendant's motion in limine to limit plaintiffs' MCPA claim to real property damages only. Consequently, the trial court erred by dismissing plaintiff Brownlow as a party for lack of standing because he did have standing to pursue a claim for personal property damage.

Finally, plaintiffs argue that the trial court erred by declining to grant their counter-motion for summary disposition as to defendant's liability under the MCPA. We review de novo a trial court's decision on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). In reviewing the motion, we consider "the pleadings, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition is properly granted "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

Plaintiffs argue summary disposition regarding liability was appropriate because defendant violated the following provisions of the MCPA:

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

* * *

(c) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have.

* * *

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

* * *

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

* * *

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

The parties argue over whether the MCPA should be construed with reference to the common-law tort of fraud. Defendant cites *Zine v Chrysler Corp*, 236 Mich App 261, 283; 600 NW2d 384 (1999), quoting *Mayhall v A.H. Pond Co, Inc*, 129 Mich App 178, 182-183; 341 NW2d 268 (1983), in which this Court stated "that it is proper to construe the provisions of the MCPA 'with reference to the common-law tort of fraud.' " Defendant argues that all of the subsections plaintiffs rely on for their MCPA claim are fraud based, and thus, plaintiff must plead and establish all the elements of fraud, specifically that defendant had actual knowledge of the misrepresentation or reckless disregard of its truth.[3] However, defendant's argument erroneously interprets the rule of law stated in *Zine*, and writes elements of fraud into the provisions of the MCPA where they do not, and should not, exist, thereby ignoring the longstanding principles of statutory interpretation.

It is well-settled that "[t]he primary goal of statutory interpretation is to give effect to the Legislature's intent." *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). The first step in determining the Legislature's intent is to review the language of the statute itself. *Id.* If the language is plain and unambiguous, then this Court is to apply the statute as written. *Id.* at 438-439. "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011); see also MCL 8.3a (stating that "[a]ll words and phrases shall be construed and understood according to the common and approved usage of the language"). When the words of the statute are given their plain and ordinary meaning, they provide the most reliable evidence of legislative intent. *Id.* at 156-157 (citation omitted). Further, to give words their plain and ordinary meaning, this Court may use dictionary definitions. *Id.* at 156. However, "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a.

The panel in *Zine* held that it is "proper" (but did not hold that it was required) to interpret the provisions of the MCPA with reference to the common-law tort of fraud (just as it is proper, but not required, to resort to dictionary definition for the plan and ordinary meaning of non-legally technical words in statutes). *Zine*, 236 Mich App at 283. The panel in *Zine* looked to the common-law tort of fraud to determine whether the term "material fact" in subsection (3)(1)(s) must affect the transaction. *Id.* at 282-283. This is consistent with the longstanding principles of statutory interpretation, i.e., this Court must first look to the language of the statute to determine the Legislature's intent, and give words their plain and ordinary meaning. But where a statute contains a technical term that has acquired a peculiar meaning under the law, such as "material fact," this Court may look to the common law. See, e.g., *Ford Motor Co*, 475

---

[3] To support this argument, defendant relies on unpublished cases, which are not precedentially binding on this Court. MCR 7.215(C)(1).

Mich at 439 (looking to the common law to define the term "mutual mistake of fact," as used in the General Property Tax Act (GPTA), MCL 211.1 *et seq.*).

Citing 2B Singer, Statutes and Statutory Construction (6th ed), § 50:03, p 152, *Ford Motor Co* states that when interpreting technical terms that have acquired a peculiar meaning in the law " 'common-law meanings are assumed to apply even in statutes dealing with new and different subject matter, to the extent that they appear fitting and in the absence of evidence to indicate contrary meaning.' " *Ford Motor Co*, 475 Mich at 439. In *Zine*, it was fitting for the panel to consult the common-law tort of fraud to define "material fact" because the MCPA is in many ways derivative of the common-law tort of fraud. However, the MCPA was enacted to eliminate an essential element of the common-law tort of fraud, i.e., the intent of the merchant. Edwin M. Bladen, *How and Why the Consumer Protection Act Came To Be*, <http://connect.michbar.org/consumerlaw/reports/articles> (accessed April 1, 2016), p 9-10.[4] Its purpose was to provide consumers with an effective remedy where, for example, a merchant's conduct was unfair or deceptive, but did not amount to fraud. *Id.* Although the MCPA eliminated the intent element of fraud, many of its provisions still contain fraud-based language, such as "[u]sing deceptive representations," MCL 903(1)(b), "[m]aking false or misleading statements of fact," MCL 903(1)(i), and "[f]ailing to reveal a material fact," MCL 903(1)(s). Indeed, the elements of actionable fraud include making a material representation that was false. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012).

Although Bladen states that the authors of the MCPA did not intend for the act to be construed with reference to the common-law tort of fraud, *How and Why the Consumer Protection Act Came To Be*, p 10, other than to eliminate the element of intent, there is nothing in the MCPA that shows a clear legislative intent to alter the common law meanings of the fraud-based language contained in the MCPA. See *Ford Motor Co*, 475 Mich at 439-440 (noting that absent a clear legislative intent in the GPTA itself to alter the meaning of the common-law term "mutual mistake of fact," the Court may look to the common law to define the term as used in the GPTA). Indeed, "it is a well-established rule of statutory construction that the Legislature is presumed to be aware of judicial interpretations of existing law when passing legislation." *Id.* Therefore, consistent with our holding in *Zine* and the longstanding principles of statutory interpretation, we may look to the common-law tort of fraud for guidance when interpreting ambiguous provisions of the MCPA, but only where necessary, i.e., where the statute contains a technical term that has acquired a peculiar meaning under the law.

Contrary to defendant's argument, the panel in *Zine* did not hold, or imply, that a plaintiff must plead and prove all elements of fraud, particularly intent, when asserting a claim under the MCPA, even if certain provisions of the MCPA contain fraud-based language, and there are no other published cases from this Court or our Supreme Court which state this proposition. By concluding that a plaintiff must show that the defendant had actual knowledge of the misrepresentation or reckless disregard of its truth, defendant ignores the unambiguous language of the MCPA and undermines the Legislature's intent to eliminate the intent element of fraud.

---

[4] Bladen was the principal author of the MCPA.

Simply because some subsections of the MCPA contain fraud-based language does not mean that every prohibited practice enumerated in the MCPA requires proof of intent. When the Legislature intended to require a plaintiff to prove the defendant's intent, it specifically so provided in the statute. See, e.g., MCL 445.903(g) (emphasis added) ("Advertising or representing goods or services *with intent* not to dispose of those goods or services as advertised or represented."); MCL 445.903(h) (emphasis added) ("Advertising goods or services *with intent* not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity in immediate conjunction with the advertised goods or services."). This Court has made clear that the MCPA is a remedial statute designed to prohibit unfair practices in trade or commerce, and it must be liberally construed to achieve its intended goals. *Price v Long Realty, Inc*, 199 Mich App 461, 471; 502 NW2d 337 (1993). Requiring a plaintiff to prove the intent element of fraud where it is not provided for in the statute clearly inhibits the intended goals of the MCPA and is contrary to the plain language of the statute.[5]

The plain, unambiguous language of the prohibited practices at issue in this case, subsections (3)(1)(c), (e), (s), and (cc), does not require plaintiffs to prove that defendant made a statement knowing it was false or acted recklessly without any knowledge of its truth, or that defendant knowingly or recklessly failed to reveal a material fact. With regard to the prohibited practices at issue in this case, we conclude that there is a genuine issue of material fact regarding defendant's liability under the MCPA and, therefore, plaintiffs were not entitled to summary disposition with regard to liability.

First, regarding subsection (3)(1)(c), plaintiffs argue that defendants violated the MCPA by representing that the ozone generator would remove the smoke odor when, in actuality, it would not. Plaintiffs cite a public information document issued by the United States Environmental Protection Agency (EPA), which states that ozone is generally ineffective at controlling indoor air pollution. Although the document cites written sources from the late 1990s, there is no indication of when this document was issued. The document, however, states that vendors of ozone generators made statements that lead the public to believe that the machines are safe and effective at controlling indoor air pollution, but health professionals have refuted these claims "for centuries." Nevertheless, Siegel testified that ozone is capable of removing odors. It does so by reacting with the components of the odors and chemically converting them to something that is less odorous. Brian McCall also testified that he operates an ozone generator in his building a couple times a month, and he did not state that it was ineffective at removing indoor air pollution. Accordingly, there is a genuine issue of material fact whether the ozone generator was capable of removing the smoke odor.

---

[5] Notably, the Michigan Model Civil Jury Instructions state that plaintiff only has to prove that (1) defendant engaged in trade or commerce; (2) defendant committed one or more of the prohibited methods, acts, or practices alleged by plaintiff [as stated in MCL 445.903]; and (3) plaintiff suffered a loss as a result of defendant's violation of the act. M Civ JI 113.09. There is no reference of actual knowledge or reckless disregard for the truth.

Next, regarding subdivision (e), plaintiffs argue that defendant violated the MCPA by representing that the use of ozone generator was the standard of the industry, but the EPA document indicates that is not. Plaintiffs cite defense counsel's statements at the summary disposition hearing which referenced the fact that plaintiffs have not provided industry experts who can define the remediation industry standard regarding use of ozone generators. Plaintiffs do not cite specific representations made by defendant that the ozone generator was the industry standard. Accordingly, plaintiffs have not shown how summary disposition in their favor was appropriate under subsection (3)(1)(e).

Next, plaintiffs argue that defendant violated subsection (3)(1)(s) by failing to reveal a material fact, i.e., ozone generators are destructive and would affect the integrity of the house, which could not have been reasonably known to the consumer and which tends to mislead the consumer. The literature and expert opinions provided by plaintiffs certainly support the fact that, at certain levels, ozone can damage household materials, and defendant does not dispute this. In fact, Brian McCall testified that he was aware that "very high levels of ozone" could react with natural rubber, but he was unaware what that level would be. However, plaintiff Travis testified that in conducting a simple "Google" search, she learned that ozone could cause damage to household products. This creates a genuine issue of material fact whether the fact that ozone could damage household materials is a fact that could not reasonably be known by the consumer.

Finally, plaintiffs argue that defendant positively represented that the machine would get rid of the smoke odor, but failed to disclose that the machine could also cause collateral property damage in violation of subsection (3)(1)(cc). However, there is a genuine issue of material fact whether defendant positively represented that the machine would in fact get rid of the smoke odor. The statements plaintiffs cite to support this claim on appeal were actually made to plaintiff Travis by State Farm representatives, who indicated that they would contact defendant about placing an ozone generator in the house to try to get rid of the smoke odor. Although plaintiff Travis testified that it was her understanding that the ozone generator would get rid of the smoke odor, plaintiffs do not point to any statements made by defendant directly that the ozone generator would actually be successful in removing the smoke odor. In fact, plaintiff Brownlow testified that defendant's employee told him that this was the first time defendant had used an ozone generator in a residential house. Accordingly, plaintiffs have not shown how summary disposition in their favor was appropriate. There is a genuine issue of material fact regarding defendant's liability under the MCPA, which is for the jury to decide.

Finally, our holding that the trial court erred by granting defendant's second motion for summary disposition regarding causation and by dismissing plaintiff Brownlow as a party for lack of standing, necessitate reversal of the case evaluation sanctions against both plaintiffs, and therefore we decline to address the issues raised by plaintiffs regarding the case evaluation sanctions.

In Docket No. 325843, we reverse the trial court's order granting summary disposition in favor of defendant. We also reverse the trial court's order dismissing plaintiff Brownlow as a party, as well as the order awarding defendant case evaluation sanctions against plaintiff Brownlow. In Docket No. 326903, we reverse the trial court's orders granting case evaluation

sanctions against plaintiff Travis. We remand the matter for proceedings consistent with our opinion, and we direct that, on remand, the matter be assigned to a different circuit court judge.

Plaintiffs, having prevailed in full, may tax costs pursuant to MCR 7.219.

/s/ Elizabeth L. Gleicher
/s/ William B. Murphy
/s/ Donald S. Owens